[Civ. No. 27061.  First Dist., Div. Four.  Feb. 26, 1970.]

THE PEOPLE ex rel. STATE OF CALIFORNIA et al.,
Plaintiffs and Respondents, v.
FRED R. DRINKHOUSE et al., Defendants and Appellants.

[Civ. No. 27062.  First Dist., Div. Four.  Feb. 26, 1970.]

THE PEOPLE ex rel. STATE OF CALIFORNIA et al.,
Plaintiffs and Respondents, v.
WALTER C. HARBERT, Defendant and Appellant.

(Consolidated Appeals.)

**COUNSEL**

William A. Howell, Donald G. Kendall, Cassman & Lachina and Andrew C. Lachina for Defendants and Appellants.

Thomas C. Lynch, Attorney General, E. G. Benard, Assistant Attorney General, Ralph B. Jordan, County Counsel, and Dennis N. Reid, Deputy County Counsel, for Plaintiffs and Respondents.

**OPINION**

**DEVINE, P. J.**—Summary judgment quieting title of the State of California to certain lands was rendered against appellants Drinkhouse, Rutledge and Harbert, and against other persons who have not appealed or whose appeals have been dismissed. Drinkhouse, Rutledge and Harbert filed separate notices of appeal and have filed separate briefs.

The lands were purportedly conveyed by Leslie W. Weber, the tax collector of Kern County, under a tax sale on April 24, 1964, to appellants Drinkhouse and Rutledge. The complaint to quiet title alleges that on that date the tax collector was financially interested in the sale and that the sale was therefore void. The motion for summary judgment is supported by a declaration of D. N. Reid, deputy county counsel, which recites that Weber, the tax collector at the time of the sale, was charged by indictment with violation of section 1090 of the Government Code, that he was convicted thereof upon trial by jury (as well as of conspiracy with appellant Rutledge to violate the same section), and that the judgment of conviction has become final because appeal, although noticed, was abandoned; that he has served a jail sentence upon the conviction as one condition of a grant of probation; and that the transaction which was described in the indictment was the sale on April 24, 1964, which included the properties which are the subject of this lawsuit.

Section 1090 of the Government Code forbids county officers to be

financially interested in any contract made by them in their official capacity, or to be purchasers at any sale made by them in such capacity. A sale is a contract within the conflict of interests statutes. (*Salada Beach etc. Dist.* v. *Anderson,* 50 Cal.App.2d 306, 309 [123 P.2d 86].) A contract in violation of section 1090 of the Government Code is void. As it was put in Kaufmann and Widiss, *The California Conflict of Interest Laws,* 36 So. Cal. L. Rev. 186, 199: "Notwithstanding the language that such contracts 'may be avoided'—the courts have often held that a contract in which a public officer is interested is void, rather than voidable as the statute indicates." The authors cite cases supporting their statement: *People* v. *Deysher,* 2 Cal.2d 141, 147 [40 P.2d 259]; *Berka* v. *Woodward,* 125 Cal. 119, 127 [57 P. 777]; *Stockton Plumbing & Supply Co.* v. *Wheeler,* 68 Cal.App. 592, 601 [229 P. 1020]. To these many others could be added, among them *Stigall* v. *City of Taft,* 58 Cal.2d 565, 569 [27 Cal.Rptr. 441, 375 P.2d 289]. The principle, as stated in *Berka* v. *Woodward, supra,* is that where a statute pronounces a penalty for an act, a contract founded on such act is void, although the statute does not pronounce it void nor expressly prohibit it (at p. 127). To the same effect are *Severance* v. *Knight-Counihan Co.,* 29 Cal.2d 561, 568 [177 P.2d 4, 172 A.L.R. 1107], and a host of other authorities.

## The Rutledge Appeal

██ Rutledge was convicted not only of conspiracy with Weber to violate section 1090 of the Government Code, but also of violation of the underlying section itself, which means that the jury found him guilty as a principal because of aiding and abetting. The purchase was not criminal, or illegal, merely because Rutledge was a county officer. His official position was not connected with the making of tax sales. (*Title Guar. & Trust Co.* v. *Woody,* 63 Cal.App.2d 209, 213 [146 P.2d 252].) The jury, in finding Rutledge guilty of violating section 1090, necessarily had to find that Weber, who executed the tax deed, was financially interested in the contract. Of course, Rutledge as co-defendant in the criminal case had every opportunity to challenge the prosecution's essential contention that Weber was financially interested in the contract. Despite the presumption of innocence and the requirement of proof beyond reasonable doubt, and the requirement of unanimous verdict of the jury, both Weber and Rutledge were convicted. Rutledge cannot now be heard to deny that Weber had a financial interest in the contract at the very time of its making. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 605, 607 [25 Cal.Rptr. 559, 375 P.2d 439]; *Newman* v. *Larsen,* 225 Cal.App.2d 22 [36 Cal.Rptr. 883].) He has had his day in court.

*The Drinkhouse and Harbert Appeals*

A. *Collateral Estoppel*

Appellants Drinkhouse and Harbert were not parties to the criminal prosecution. Indeed, both of them were called as witnesses for the prosecution. Drinkhouse was a co-grantee with Rutledge on the original deed from Weber. Harbert was a grantee of a deed from Rutledge.

We have said above, citing authorities, that a deed made in violation of Government Code section 1090 is void. ■ But although such a deed *ab initio* carries no title, obviously there must be a judicial decision to effectuate nullification against nominal title. In reaching such a decision, however, the judicial body need only find that the officer acting for the state as grantor had a financial interest in the property. All other matters, equities and the like, are irrelevant. The final conviction of Rutledge established invalidity of the deed as to him, as explained above.

But Drinkhouse and Harbert contend that the doctrine of collateral estoppel does not apply to them, because, they say, they were neither parties to the criminal prosecution nor were they privies to the defendants. They contend that they have not had their day in court, because they had no control of the criminal prosecution. They could not produce witnesses, nor could they cross-examine witnesses produced by the People. They could not have their own counsel, nor could they appeal.

The three questions which we put to ourselves in determining whether collateral estoppel applies to appellants Drinkhouse and Harbert, as taken from *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439], are: " 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?' "

■ The first interrogatory must be answered in the affirmative. As we have said before, the single question, a necessary question in the criminal case, was, and the single one in this case is, whether Weber was financially interested in the contract at the time it was made. Appellants would have it that they are entitled, in the quiet title action, to challenge and to require the People to prove the fact that Weber actually was interested financially at the very time of sale. (The evidence in the criminal case was that whenever Rutledge made a resale of a part of the property which had been conveyed to him in the tax deed, he remitted exactly one half of the proceeds to Weber. What the state had to prove, and did prove, to the satisfaction of the jury was that this procedure was not an afterthought but was an

integral part of the arrangement of the sale.) Question No. 1 clearly has been answered.

Question No. 2, of course, is answered affirmatively. No appeal has taken from the judgment of conviction, nor has that conviction been attacked collaterally.

We come now to Question No. 3, whether appellants were in privity with Weber and Rutledge, the parties to the prior adjudication. Our answer is that they were such privies. It is true that there are statements in the cases to the effect that a privy is one who *after rendition of the judgment* has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase. Such a statement, indeed, appears in *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 811 [122 P.2d 892], the landmark case which did away with the need for mutuality of estoppel. Appellants make the point that they did not become grantees after the judgment of conviction, but rather before it was rendered.

But the word "privy" has acquired an expanded meaning. The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending "privies" beyond the classical description. (*People* v. *One 1964 Chevrolet Corvette Convertible,* 274 Cal.App.2d 720, 731 [79 Cal.Rptr. 447].) The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion. (*People* v. *One 1964 Chevrolet Corvette Convertible, supra,* at pp. 731-732; Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L. Rev. 27, 45.) To quote Professor Vestal (at p. 45): "The courts and commentators have indicated a dissatisfaction with the analysis in terms of privity and mutuality and have expanded the impact of preclusion far beyond the traditional concepts. Clearly, the field is developing; it is obvious that the last word has not been spoken on the matter."

It will be observed that the term "collateral preclusion" appears in modern legal literature and, in fact, this term was thought of by the reporters of the Restatement of Judgments as being appropriate because it is less personal than that of "collateral estoppel," but the latter expression was kept because of usage. (Scott, *Collateral Estoppel By Judgment,* 56 Harv. L. Rev. 1, 3, fn. 4.)

In view of what has been said above, we regard the reference in the

*Bernhard* case to privies as those who take after former judgment as surely including such parties, but not as limiting the class to these exclusively. It does not seem likely that the *Bernhard* court, while it was engaged in the process of removing the requirement of mutuality of estoppel (and doing so well in advance of its time: Currie, *Civil Procedure: The Tempest Brews,* 53 Cal. L. Rev. 25), at the same moment was erecting a barrier to the legitimate process of the meaning of "privies" to earlier litigation.

We proceed to consider the reasons for applying collateral estoppel, or collateral preclusion, to appellants. The primary one is that we are dealing with a *public interest* in this case, and this fact sets the case apart from many others in which the subject of collateral estoppel affected parties whose interests were wholly private, and in which the innocence of the prospective estoppee was an important factor.

We consider the subject of the defense. The main defense offered by appellants has not been without its proponents. In the criminal action, Weber, the tax collector, had every reason to combat and did combat the accusation of his financial interest in the sale: his position, his reputation and his freedom were at stake. Similar motives impelled Rutledge, Harbert's grantor, to fight the charges. In the case of *People* v. *One 1964 Chevrolet Corvette Convertible, supra,* 274 Cal.App.2d 720, it was held that the owner of the automobile (who was the father of the driver who was carrying contraband in it) was not entitled to relitigate the issue of the entrustee's knowledge of the presence of the contraband. This subject had been litigated in the criminal trial and the owner's interest, therefore, had been adequately represented by the defense. The same arguments about inability to control the litigation which are made to us were made in that case and were rejected.

If appellants were permitted in this lawsuit to challenge the critical fact of Weber's financial interest, and if, by reason of failure of proof on the part of the People (whether because of absence of witnesses, lack of cogency of evidence, or any cause whatever), the fact were not proved, several anomalies unsettling to public confidence in the judicial process would appear. First, there would be presented the repugnancy that county officers would have been convicted, jailed and removed from office for their part in a transaction which in the civil suit would be found to be untainted in its essentials.

Second, there would be a contradictory position of two grantees to the same deed. Appellant Drinkhouse is a cograntee with the convicted Rutledge. Of course, his nominal title to the property antedated the judgment

of conviction, but this, we believe, does not prevent his being regarded a privy. We should also have the anomalous situation, if collateral preclusion did not apply, that the identical deed would be void as to Rutledge but, presently at least, valid as to Drinkhouse and, possibly, after trial of the quiet title action, through failure of proof, absence of witnesses, or otherwise, would be valid as to Drinkhouse's interest.

Another incongruity would exist as to Harbert, Rutledge's grantee. The deed to Harbert from Rutledge was on January 26, 1965, which was about three weeks after Rutledge had been indicted on January 7, 1965, and about two months after Harbert had testified before the grand jury. In September 1964, Harbert, according to an admission made by him at the criminal trial, had an option to buy. The deed itself was not executed until after the indictment had been filed. If Harbert be not considered a privy, it would be possible that a tax deed held void as against the public policy and in violation of statute as to Rutledge, might be adjudged valid as to Harbert, Rutledge's grantee, despite the law that a deed in violation of the statute is void *ab initio*.

Considerations of public policy and of the orderliness of titles, and of the finality of litigation, impel us to the conclusion that appellants Drinkhouse and Harbert are precluded from retrying the essential issue in the case.

B. *Other Points*

■ There are specific statements in the declarations of appellants to the effect that the state and county have recognized appellants' title because no reimbursement to the purchasers has been made or offered. The state was not bound to make or to offer reimbursement as a condition to maintaining this lawsuit. (*People* v. *Chambers,* 37 Cal.2d 552, 561 [233 P.2d 557].)

■ The case of *People* ex rel. *Mosk* v. *Barenfeld,* 203 Cal.App.2d 166, 173 [21 Cal.Rptr. 501], holding that estoppel will sometimes run against the state where justice and right require it, is inapplicable. The court made it plain in that case that the case did not fall within Government Code section 1090.

■ Appellants' declarations also make the point, by way of defense, that the county has assessed taxes against the subject parcels and has collected taxes from appellants. The payment of taxes does not breathe life into a void conveyance. (See *People* v. *Chambers,* 37 Cal.2d 552, 561 [233 P.2d 557].)

■ If the affidavits in support of the moving party are sufficient to sustain a judgment in his favor, and the adversary does not by affidavit present any facts giving rise to a triable issue, summary judgment is proper. (*R. D. Reeder Lathing Co.* v. *Allen,* 66 Cal.2d 373, 376-377 [57 Cal.Rptr.

841, 425 P.2d 785]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Wozniak* v. *Peninsula Hospital,* 1 Cal.App.3d 716, 722 [82 Cal.Rptr. 84].) Because the only issue raised by appellants in their affidavits in opposition to the motions for summary judgment was the validity of their deeds, and because this issue has been conclusively determined by the criminal action, as a matter of law, no triable issue of fact was presented. The summary judgments, therefore, were proper.

The judgments are affirmed.

Rattigan, J., and Christian, J., concurred.

The petitions for a rehearing were denied March 18, 1970, and appellants' petitions for a hearing by the Supreme Court were denied April 22, 1970.