[Civ. No. 31708. First Dist., Div. Two. Nov. 22, 1974.]

AMERICAN BROADCASTING COMPANIES, INC., et al.,
Cross-complainants and Appellants, v.
WALTER READE-STERLING, INC., Cross-defendant and Respondent.

402

**404**

## Counsel

Lillick, McHose, Wheat, Adams & Charles, Frank L. Adamson, Ann Miller, Robert Fremlin and Branden E. Bickel for Cross-complainants and Appellants.

Miller, Groezinger, Pettit & Evers, John E. Parks IV and Robert L. Ivey for Cross-defendant and Respondent.

## Opinion

**KANE, J.**—Cross-complainants American Broadcasting Companies, Inc. and ABC Sports, Inc. ("ABC") appeal from a judgment of nonsuit denying recovery for attorney's fees and expenses claimed in their cross-complaint.

The relevant facts disclose that plaintiff Marvin E. Becker ("Becker") brought suit against respondent Walter Reade-Sterling, Inc. ("Reade-Sterling"), appellant ABC, John Jay Films, Inc. ("John Jay") and others for alleged unauthorized use of certain film footage of the 1960 Winter Olympics at Squaw Valley, California. Becker produced the film and, pursuant to a contract, supplied it to John Jay, a film library, which, in turn, supplied it to Reade-Sterling. ABC obtained the footage from Reade-Sterling under a contract dated August 26, 1963. By Clause 4 of the agreement, Reade-Sterling represented that it had the right to supply the films to ABC for television use and agreed to indemnify ABC against all claims, damages, liabilities, costs and expenses, including reasonable attorney's fees, arising from the broadcast, exhibition or other use of said films.[1] Pur-

---

[1]Clause 4 of the agreement reads as follows: "4. You represent and warrant that you have the right to supply such films to us for the purposes herein set forth and that you have the right to grant to us the right to incorporate said footage in the aforesaid series, to broadcast, otherwise exhibit, or otherwise use all of said footage so incorpo-

suant to the agreement, ABC made use of parts of the film footage in a television series. As a consequence, Becker commenced suit claiming that none of the defendants had any television rights in the footage, because it had been supplied to John Jay solely for lecture tours personally conducted by John Jay.

In response to the Becker action, ABC cross-complained against Reade-Sterling for indemnification against all sums for which ABC might be found liable to Becker and for costs and expenses, including reasonable attorney's fees, incurred in defending the case. At the trial appropriate evidence was taken to establish the amount of attorney's fees and costs, but the testimony also revealed that none of these fees or costs, totaling approximately $13,168 had yet been billed to or paid by ABC. Thereupon Reade-Sterling moved for a partial nonsuit limited to the claim for attorney's fees, contending that the statutory requirements of recovery as set forth in Civil Code, section 2778,[2] had not been met.

Initially, the trial court denied the motion. Subsequently, however, after indulging in further research, counsel for ABC concluded that the claim for attorney's fees and costs was premature and, most commendably, advised the trial court that its earlier ruling should be reversed. In this context the motion for nonsuit was granted and the court requested both parties to prepare proposed orders for the judgment of nonsuit.

The rest of the case proceeded. The court granted a nonsuit to four of Becker's six causes of action. The court then submitted the case to the jury on the remaining questions of the primary liability of John Jay and ABC to Becker, and of the secondary liability of Reade-Sterling to ABC under the indemnity contract should ABC's primary liability toward Becker

---

rated in said film, throughout the world and that such broadcast, or other use thereof will not violate the rights of others and you *agree to indemnify* us, *American Broadcasting Company,* American Broadcasting-Paramount Theatres, Inc., the sponsors of the series and their advertising agencies, any and all stations broadcasting the series or any portions thereof, any and all distributors or sub-licensees of such series, our and their officers, directors, agents, stockholders and employees from and *against* any and *all claims, damages, liabilities, costs and expenses, including reasonable attorneys' fees arising out of the broadcast, exhibition or other use of said films."* (Italics added.)

[2]Civil Code, section 2778, provides in pertinent part that "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: . . . 2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, *the person indemnified is not entitled to recover without payment thereof* . . . ." (Italics added.)

be established. The jury returned a verdict against Becker in favor of all defendants, and against ABC on its indemnity action.

After the jury verdict was returned, both ABC and Reade-Sterling submitted their respective proposed orders for judgment of nonsuit on the cross-complaint with respect to the attorney's fees. The order proposed by ABC contained language that the judgment of nonsuit was not an adjudication on the merits, whereas the order proposed by Reade-Sterling did not contain such a provision. After a hearing the court adopted the version submitted by Reade-Sterling.

On appeal ABC contends that in the situation here presented the trial court's failure to specify in the judgment that it was not an adjudication upon the merits constitutes a prejudicial abuse of discretion and as a consequence the judgment cannot stand. Appellants' position is well taken and accordingly the judgment must be reversed.

Preliminarily, we underscore that the judgment of nonsuit at hand cannot be interpreted in any other way than an adjudication on the merits. While prior to 1961 a judgment of nonsuit was not a bar to a subsequent action on the same cause of action (cf. *Mohn* v. *Tingley* (1923) 191 Cal. 470, 478 [217 P. 733]; *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 403 [154 P.2d 399]; *Ridley* v. *Young* (1944) 64 Cal.App.2d 503, 508 [149 P.2d 76]), the 1961 amendment to section 581c of the Code of Civil Procedure made it explicit that a judgment of nonsuit operates as an adjudication upon the merits, *unless the trial judge expressly provides otherwise.*[3]

■ It is thus apparent that, under section 581c of the Code of Civil Procedure, the trial court is vested with discretion to make a nonsuit either an adjudication upon the merits or not (*Salomons* v. *Lumsden* (1949) 95 Cal.App.2d Supp. 924, 928-929 [213 P.2d 132]; see also *Safeway Stores* v. *Fannan* (9th Cir. 1962) 308 F.2d 94). ■ Since the judgment in the case at bench does not "otherwise specify" it operates as an adjudication upon the merits. Accordingly, the cardinal issue confronting us is

---

[3]Code of Civil Procedure, section 581c, as amended in 1961, sets forth that "After the plaintiff has completed his opening statement, or the presentation of his evidence in a trial by jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit.

"If the motion is granted, *unless the court in its order for judgment otherwise specifies, such judgment of nonsuit operates as an adjudication upon the merits.*" (Italics added.)

whether or not the trial court abused its discretion by giving res judicata effect to the judgment of nonsuit in question.

In determining this issue it is well to call to mind that respondent's motion for judgment of nonsuit was made on the basis that appellants failed to prove the actual payment of attorney's fees and costs. The judgment of nonsuit likewise recites that the proof of payment was a prerequisite to the recovery of the attorney's fees and expenses; that the evidence fell short of showing the payment of attorney's fees and expenses; that appellants could not recover such fees and expenses in the absence of proof of payment and finally that the nonsuit was granted solely upon the aforestated grounds.[4] In short, the ruling of the court was founded on the premise that appellants' cause of action was prematurely brought because the payment of the attorney's fees and costs, a condition precedent to recovery under section 2778 of the Civil Code, had not been met.

 However, the law is settled beyond controversy that when an action has been brought prematurely because a condition precedent necessary to the cause of action has not been complied with, the plaintiff is not precluded from maintaining an action after his claim has matured; and in such a case the doctrine of res judicata does not constitute a bar to his recovery (*Hardin* v. *Dickey* (1899) 123 Cal. 513 [56 P. 258]; *Nevills* v. *Shortridge* (1905) 146 Cal. 277 [79 P. 972]; see also: *National Ro-Tile Corporation* v. *Loomis* (1960) 82 Idaho 65 [350 P.2d 217]). Thus, it has been stated that where a judgment is rendered for the defendant on the ground of the nonexistence of some fact essential to the plaintiff's cause of action, the plaintiff is not precluded from maintaining an action after

---

[4]The pertinent part of the judgment reads as follows: "On August 12, 1971, after close of cross-complainants' case, *counsel for cross-defendant moved for a judgment of nonsuit*, limited, however, to attorney's fees and expenses, *on the ground* of insufficiency of the evidence in that the contract of indemnity, insofar as applied to attorney's fees and expenses, was an indemnity against loss rather than liability; *that proof of payment was* therefore *a prerequisite to a recovery* on cross complainants' claim *for attorney's fees and expenses; that the evidence* in connection with cross-complainants' case *showed that payment of* said *attorney's fees and expenses had not in fact been made.*

"Thereafter, on said 12th day of August, 1971, counsel for cross-complainants conceded that after further research he was obliged to acknowledge that the aforesaid legal contention of counsel for cross-defendant was correct, and *that cross-complainants could not* therefore *recover* on their cross-complaint *for attorney's fees and expenses in the absence of proof of payment.*

"There were at that time no further motions, and the motion for a judgment of nonsuit being submitted, *the motion was granted* insofar as it involved counsel fees and expenses, *solely on the grounds hereinabove set forth.*" (Italics added.)

such fact has subsequently come into existence (Rest., Judgments, § 54). Consequently, a determination by the court that the plaintiff had no enforceable cause of action at the time when the action was brought is not a determination that he may not have an enforceable cause of action thereafter when his cause of action does become enforceable (Rest., Judgments, § 54, com. a; see also *Keidatz* v. *Albany* (1952) 39 Cal.2d 826, 828 [249 P.2d 264]). ■ It is likewise axiomatic that a judgment is a bar to a subsequent action only where an *identical issue* was decided in a prior case by a final judgment on the merits (*French* v. *Rishell* (1953) 40 Cal.2d 477, 479 [254 P.2d 26]). ■ The theory of estoppel by judgment or res judicata, however, *extends only to the facts in issue as they existed at the time the judgment was rendered* and does not prevent a reexamination of the same questions between the same parties where in the interim the facts have changed or new facts have occurred which may alter the legal rights of the parties. *When other facts* or conditions *intervene* before a second suit, furnishing a new basis for the claims and defenses of the respective parties, *the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action* (*Hurd* v. *Albert* (1931) 214 Cal. 15, 26 [3 P.2d 545, 76 A.L.R. 1348]; *Hasselbach* v. *Dept. Alcoholic Bev. Control* (1959) 167 Cal.App.2d 662, 665 [334 P.2d 1058]; 29 Cal.Jur.2d, § 261, p. 230).

■ The foregoing legal principles as applied to the instant facts compel the conclusion that the trial court abused its discretion when, by its silence, it attached res judicata effect to the judgment of nonsuit in question. It has been repeatedly held that the discretion conferred upon the trial court is not a capricious or an arbitrary one, but rather an impartial discretion, guided by fixed legal principles. Moreover, it is not a mental discretion, to be exercised ex gratia, but a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve, not to impede or defeat, the ends of justice (*Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424; *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593]; *Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 96 [84 Cal.Rptr. 113, 465 P.2d 1]). Where the trial court fails to exercise the discretion bestowed upon it in the aforestated fashion, and where, as in the instant case, it arrives at an erroneous legal conclusion, its order or judgment is subject to reversal (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 279 [75 Cal.Rptr. 848]).

Although the above discussion leaves no doubt that the trial court committed reversible error, respondent insists that the judgment below should

be affirmed. In substance, respondent argues that the doctrines of prematurity or changed circumstances are applicable only in cases where the prematurity of obligation is the subject of a bona fide dispute and where the change of circumstances is outside the control of the party. In the instant case, continues respondent, the prematurity of appellants' cause of action was obvious and could have been cured by merely paying the attorney's fees, which was entirely within appellants' control. In the alternative, respondent contends that the appeal at hand should be dismissed on account of mootness.

Respondent's first contention is not borne out by the record or by applicable legal principles. The pleadings and the evidence appearing in the record clearly indicate that appellants entertained a bona fide mistaken idea with regard to the applicability of section 2778 of the Civil Code to their claim set out in their cross-complaint. The existence of a bona fide dispute is demonstrated by the fact that initially appellants resisted the motion for nonsuit and it was denied by the trial court and, furthermore, by the circumstance that appellants introduced evidence at the trial to prove the amount incurred for attorney's fees and costs. Only after it was shown at the trial that these sums had not been paid by appellants, and after counsel for appellants did extensive research relative to the applicability of section 2778 of the Civil Code to the case at bench, did it become obvious and conceded by appellants that their claim was premature and therefore subject to a nonsuit.

Respondent's assertion, that the curing of the defect was within appellants' control and could have been easily cured by the simple payment of the attorney's fees, is also unfounded. In refutation of respondent's contention, the record reveals that the motion for nonsuit was made by respondent while the trial was in progress and before the issues were submitted to the jury. At that time appellants were in no position to predict with any degree of certainty the amount to be incurred for attorney's fees and costs during the entire trial or for post-trial and appellate procedures. An eventual demand to ascertain such fees and costs in the midst of the action would have placed appellants in the untenable posture of having to speculate on the future expenses or to forego a part of the recovery to which they were entitled under the indemnification clause of the contract.

In addition, respondent's argument is refuted by legal principles. The law controlling this case has been concisely summarized recently in Restatement Second (Tent. Draft No. 1, March 28, 1973) Judgments, section 48.1, subdivision (2), which provides: "A valid and final personal

judgment for the defendant which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, *unless a second action is precluded by operation of the substantive law or the circumstances are such that it would be manifestly unfair to subject the defendant to such an action.*" (Italics added.) Here, no provision of substantive law precludes another action for attorney's fees. ■ On the contrary, Civil Code, section 2778, subdivision 2, expressly sanctions another action after an actual payment has been made. Moreover, the institution of another action for recovery of attorney's fees, far from being manifestly unfair, would be entirely justified and in full accord with the contractual obligation which respondent voluntarily assumed for valuable consideration.

■ Respondent's alternative claim that the appeal at bench is moot and therefore subject to dismissal is based upon the assertion that the jury verdict finding in respondent's favor on the cross-complaint was a conclusive determination that respondent had no obligation to indemnify appellants at all. This contention of respondent cannot be accepted for at least three reasons.

First, regardless of the various theories of recovery set out in the Becker complaint against all defendants, in ultimate analysis the cause of action against appellants was stated on the ground that appellants used and televised the film footage purchased from respondent. This, of course, brought into play the indemnification clause of the contract because both the damages claimed by Becker and the necessity of defending the lawsuit and incurring attorney's fees in connection therewith arose "out of the broadcast, exhibition or other use of said films."

Second, the record makes it crystal clear that the motion for nonsuit effectively removed the question of attorney's fees from the consideration of the jury,[5] and the jury was instructed to that effect (see below). Thus, the issue of attorney's fees was not before the jury at all.

---

[5]Mr. Parks, counsel for respondent, made inter alia the following statement: "[I]t's my feeling that as to the claim for attorney's fees in the cross-complaint that Subsection 2 of Civil Code Section 2778 entitles me to a nonsuit in view of the fact that the cross-complainant has failed to establish that ABC has been billed and paid for the attorney's fees which it now seeks to recover in the cross-complaint against Walter Reade-Sterling. *As to the liability,* that is, the possibility *of the jury finding ABC liable for its showing of the John Jay films,* and that it has thereby breached an implied in fact contract with Mr. Becker if the jury should find that that breach rose out of the viewing, or broadcast of the Jay Library *I make no request for a nonsuit* on the

Third, the jury instruction[6] by which we augment the record on appeal on our own motion (rule 12(a), Cal. Rules of Court) unequivocally shows that, in order to bring in a verdict for respondent on the cross-complaint, the jury had to make the dual finding that appellants were liable to Becker *and* the liability arose out of the use of the film footage sold by the contract to appellants. Consequently, the verdict for respondent cannot be considered conclusive as to respondent's indemnity liability in general, because such verdict might well have been rendered on the sole basis that the jury had found against Becker and in favor of appellants.

Respondent's additional arguments, based on an estoppel theory, and on the contention that appellants voluntarily dismissed or abandoned their case, are without merit and must be summarily rejected.[7]

The judgment of nonsuit is modified by specifying that it shall not operate as an adjudication upon the merits. In all other respects—and as so modified—the judgment is affirmed. Appellants to recover costs.

Taylor, P. J., and Rouse, J., concurred.

---

issue of liability, or indemnification *for that kind of liability. It's only as to the attorney's fees."*

Mr. Adamson, counsel for appellants, similarly stated in his argument to the jury that "I must apologize to you for taking up your time with the evidence concerning our attorney's fees, and costs. *That part has been dismissed . . .*" (italics added).

See to the same effect the preface of judgment of nonsuit, *infra*, fn. 4.

[6]The instruction in question reads as follows: "In the event you find that ABC is liable to plaintiff, Becker, for breach of an implied-in-fact contract, *and* that the liability arose out of the use of the John Jay Squaw Valley film, then, in accordance with the indemnity agreement contained in the contract between ABC and Walter Reade-Sterling, Inc., your verdict on the cross-complaint must be in favor of cross-complainant, ABC, and against cross-defendant, Walter Reade-Sterling, Inc., in an amount that shall be in the same sum as your verdict in favor of Becker and against Defendant, ABC; *otherwise your verdict on the cross-complaint must be in favor of cross-defendant and against cross-complainant.* If your verdict on the cross-complaint is in favor of cross-complainant, you may not include in your award any allowance for attorneys' fees incurred by ABC." (Italics added.)

[7]The reporter's transcript shows beyond doubt that counsel for ABC conceded only the point of prematurity, and that he intended to pursue the claim later. That there was no voluntary abandonment or dismissal is also clearly evidenced by the proposed judgment of nonsuit submitted by ABC.