[No. A025056. First Dist., Div. One. Apr. 24, 1990.]

BETTY ARONOW, Plaintiff and Respondent, v.
EDWARD LaCROIX et al., Defendants and Appellants.

**Counsel**

Ropers, Majeski, Kohn, Bentley, Wagner & Kane and Gail Y. Norton for Defendants and Appellants.

Betty Aronow, in pro. per., for Plaintiff and Respondent.

## OPINION

**HOLMDAHL, J.**[*]—The trial court found for plaintiff in a malicious prosecution trial, and awarded damages and costs. Defendants appeal the judgment.

The judgment is reversed and the trial court is directed to enter judgment for appellants.

### Facts

LaCroix and Schumb became associated in the practice of law in 1964. In June, 1966, Schumb referred Roscoe Bailey to LaCroix in connection with a possible claim by Bailey against Joseph Fitzsimmons, M.D. (Dr. Joseph), Ann Fitzsimmons, M.D. (Dr. Ann), and Jerome Lackner, M.D., for medical malpractice. On June 29, 1967, LaCroix filed a medical malpractice suit on behalf of Roscoe Bailey against Dr. Joseph, Dr. Ann, and Lackner. Trial of that suit proceeded in two phases, first on the statute of limitations defense and second on the merits. (See Code Civ. Proc., § 597; *Aerojet General Corp.* v. *Superior Court* (1986) 177 Cal.App.3d 950, 952 [223 Cal.Rptr. 249].) Lackner prevailed on his statute of limitations defense as a result of a verdict returned on February 3, 1970. Betty Aronow, who had up to that time been a spectator at the trial, substituted in as Dr. Ann's attorney of record for the second phase of trial, but the second phase of the trial did not occur. On February 9, 1970, Bailey settled the case for $45,000. This case, *Bailey I,* is the ancestor, the great-grandparent, of the case now on appeal.

The first of *Bailey I*'s descendants made its appearance on February 13, 1970. Aronow, then acting as attorney for Lackner, filed a malicious prosecution action against Bailey, LaCroix, and Schumb (*Lackner I* ). ██ ██ ██ ██ The trial court granted the defendants' motion for summary judgment, on the ground that the success of Lackner's statute of limitations defense was not a termination of *Bailey I* favorable to Lackner on the merits, in a sense which would permit Lackner to go ahead with his malicious prosecution action,[1] and dismissed *Lackner I.* The Supreme Court of California upheld this trial court ruling in an opinion and judgment filed

---

[*] Assigned by the Chairperson of the Judicial Council.

[1] "[T]he plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379].) Additionally, such a plaintiff must plead and prove two further elements—that the defendant proceeded without probable cause and that the defendant proceeded with malice. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871, 874 [254 Cal.Rptr. 336, 765 P.2d 498], citing *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

November 27, 1979. (*Lackner* v. *LaCroix,* 25 Cal.3d 747 [159 Cal.Rptr. 693, 602 P.2d 393].)

The second member of *Bailey I*'s first generation of descendants made its appearance January 18, 1971. Aronow, acting as attorney for Dr. Ann, filed a malicious prosecution action against Bailey, LaCroix, and Schumb. This case (*Fitzsimmons I*) went to trial and resulted in a judgment for the defendants entered on September 24, 1973.

The second generation of *Bailey I*'s descendants followed close on the heels of the first, but included only one member. On January 28, 1971, LaCroix and Schumb, acting as attorneys for Bailey, sued Aronow, Dr. Ann, and Lackner in Santa Clara County Superior Court. ■ ■ ■ ■ An amended complaint filed June 4, 1971, alleged five theories of recovery in five counts, including alleged abuses of process in the prosecutions of *Lackner I* and *Fitzsimmons I.*[2] This case (*Bailey II*) was dismissed after a demurrer to the amended complaint was sustained, without leave to amend. The judgment of dismissal was affirmed on appeal on May 14, 1974.

There are three great-grandchildren in the third generation of *Bailey I*'s descendants. After affirmance of the judgment dismissing *Bailey II,* on March 4, 1975, Lackner, represented by Aronow, sued LaCroix, Schumb, and Bailey for their alleged malicious prosecution of *Bailey II.* This suit (*Lackner II*) was settled for $20,000 on April 3, 1980. On May 13, 1975, Dr. Ann filed a complaint for malicious prosecution against LaCroix, Schumb, and Bailey in Santa Clara County Superior Court, complaining of the prosecution of *Bailey II.* As more fully recounted in the procedural history below, this case (*Fitzsimmons II*) eventually went to trial and appeal. The third great-grandchild made its appearance on July 11, 1975, when Aronow, representing herself, filed her own complaint for malicious prosecution against LaCroix, Schumb, and Bailey in Alameda County Superior Court. Bailey died on February 25, 1977, before any of the cases in the third generation of *Bailey I*'s descendants was resolved. *Aronow* is the case now on appeal.

---

[2] Malicious prosecution was not available to Bailey as a theory of recovery because, as of the time he sued, there had been no termination, favorable or otherwise, of the malicious prosecution actions of which he complained. (*Babb* v. *Superior Court, supra,* 3 Cal.3d at p. 845.) However, "in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding [of which he complains] has terminated in his favor . . . ." (*Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 526 [154 Cal.Rptr. 874].)

The seven cases outlined above, according to the four generations into which they fall, with their filing dates, are as follows.

1. *Bailey I* (6/29/67)

2. *Lackner I* (2/13/70) *Fitzsimmons I* (1/18/71)

3. *Bailey II* (1/28/71)

4. *Lackner II* (3/4/75) *Fitzsimmons II* (5/13/75) *Aronow* (7/11/75)

*Procedural History*

LaCroix and Schumb (appellants herein) moved to change the venue of *Aronow* from Alameda County to Santa Clara County, where *Fitzsimmons II* was pending. This motion was granted August 2, 1978.

On February 29, 1980, Aronow moved for a summary adjudication of issues with respect to two of the three elements in her burden of proof (see fn. 1, *ante*, p. 1042)—favorable termination and lack of probable cause. The trial court granted Aronow's motion on April 9, 1980, in its entirety with respect to favorable termination, but only as to the fourth count of *Bailey II*, alleging slander, with respect to lack of probable cause. By order dated April 24, 1980, the trial court granted appellants' motion to consolidate *Fitzsimmons II* with *Aronow* and set trial for June 16, 1980. By order dated May 9, 1980, the trial court granted Dr. Ann the same summary adjudication of issues as that which Aronow had won.

Jury trial of the consolidated actions began as scheduled on June 16, 1980. On July 16, 1980 appellants moved for a mistrial. The motion was granted as to *Aronow* but denied as to *Fitzsimmons II*. Trial of *Fitzsimmons II* continued.

The trial court's ruling on the motions for summary adjudication of issues constituted a determination that there were triable issues of fact with respect to the question of probable cause to pursue *Bailey II*, concerning all theories of recovery except for slander. Therefore, jury resolution of these issues of fact was a necessary prerequisite to the court's determination of the purely legal question of whether, based on the facts found to be true, such probable cause existed. "[T]he jury must resolve the threshold question of the defendant's factual knowledge or belief. . . . [T]he jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding." (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47

Cal.3d at p. 881; accord *Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547, 569-570 [264 Cal.Rptr. 883].)

The jury made the requisite factual determinations on October 16, 1980, in its responses to a set of thirty-four interrogatories and eight special questions pertaining to each of the four theories of recovery in question. The jury explicitly found, with respect to Dr. Ann *and* with respect to Aronow, that appellants honestly believed that the facts forming the basis for each of these theories of recovery were true, and that appellants had reasonable grounds to believe them true. Based on these factual findings by the jury, the court determined, as a matter of law, that appellants did have probable cause to pursue the first four theories of recovery alleged in *Bailey II.* As a result of this legal determination, Dr. Ann had failed to meet her burden of proof with respect to four out of the five theories of recovery asserted in *Bailey II,* no matter what the evidence may have shown with respect to appellants' malice or lack thereof in prosecuting those four theories of recovery. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 875; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d at pp. 567-568.)

As for the slander theory of recovery, Dr. Ann had already won a summary adjudication with respect to two out of the three elements which she needed to prove—favorable termination and lack of probable cause. The only question remaining, with respect to the slander count of *Bailey II,* was the existence of malice. This question was "a question of fact to be determined by the jury," provided that Dr. Ann could produce substantial evidence which would support a jury finding of malice. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 874.) The trial court entertained Dr. Ann's offer of proof with respect to the malice element for the slander count, found it wanting, and granted a nonsuit in appellants' favor with respect to that one remaining question. (See Code Civ. Proc., § 581c.) Based on the above recounted findings and determinations, the court signed a judgment in appellants' favor on January 27, 1981. Dr. Ann appealed, but this court affirmed the judgment in *Fitzsimmons II* by an unpublished opinion filed June 24, 1987 (No. A014873).

*Aronow* went to trial for the second time on October 5, 1982, this time without a jury. As in *Bailey I,* trial proceeded in two phases. The first phase was to resolve the issue of liability. The second phase was to resolve the issue of damages, if liability were found. The trial court found for Aronow on the liability issue on April 18, 1983, after 66 days of trial. The damages phase of the trial began on May 17, 1983, and resulted in a decision on May 31, 1983, fixing damages at $8,000.

Judgment in favor of Aronow for $8,000 damages and $462 costs was entered September 2, 1983. Aronow filed her notice of appeal October 28,

1983 and appellants noticed their cross-appeal November 1, 1983. Aronow's appeal was dismissed on May 16, 1985, because of her failure to pay her share of the cost of preparation of a clerk's transcript, and accordingly only appellants' appeal remains for our consideration.

### Effect of Judgment in Appellants' Favor in Fitzsimmons II

Appellants contend that the judgment against them must be reversed because of the claim-preclusive (res judicata) effect of the judgment in their favor in *Fitzsimmons II.*

■ "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892] quoted in *In re Marriage of Modnick* (1983) 33 Cal.3d 897, 904, fn. 6 [191 Cal.Rptr. 629, 663 P.2d 187].)

First, we consider the question of a final judgment on the merits. At the time the court trial of *Aronow* began, *Fitzsimmons II* was on appeal, so there was no final judgment in *Fitzsimmons II* on which appellants could rely to raise a res judicata defense in the trial court.[3] (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 212, p. 649.) However, the remittitur in *Fitzsimmons II,* declaring our affirmance of the judgment in appellants' favor to be final, issued on September 28, 1987, while the present appeal was pending.

Under these circumstances, appellants now have a final judgment on which to base a claim of res judicata, and they can raise the issue on appeal. ■ "Although normally the res judicata effect of a prior judgment must be pleaded and proven at trial, when the judgment becomes final during the pendency of an appeal in another action, the first final judgment may be brought to the attention of the appellate court in which the appeal is pending and may there be relied on as res judicata. [Citation.] . . . The judgment in [*Fitzsimmons II* ] was not final until after the trial court issued its judgment in the present action. Having raised this issue at [their] first opportunity, [appellants] may raise it on appeal for the first time." (*First N.B.S. Corp.* v. *Gabrielsen* (1986) 179 Cal.App.3d 1189, 1195 [225 Cal.Rptr. 254], with designations changed to fit the facts of the present case; accord *Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 977 [104 Cal.Rptr. 42,

---

[3] Actually, appellants attempted to raise such a defense in the trial court, but the court quite correctly ruled against them.

500 P.2d 1386]; *Baughman v. State Farm Mut. Auto. Ins. Co.* (1983) 148 Cal.App.3d 621, 624-625 [196 Cal.Rptr. 35].)

Further, the judgment in *Fitzsimmons II* was a judgment after a trial on the issues of fact. As such, it "meets all the tests and carries out the policies of the doctrine" which requires a judgment on the merits for res judicata to apply. (7 Witkin, *op. cit. supra*, Judgment, § 218, p. 655.) ■ The fact that the judgment is based, in part, on the granting of nonsuit does not make it any less a judgment on the merits. (Code Civ. Proc., § 581c, subd. (c); *American Broadcasting Companies, Inc.* v. *Walter Reade-Sterling, Inc.* (1974) 43 Cal.App.3d 401, 406 [117 Cal.Rptr. 617].)

■ Second, we consider the question of identity of issues. Appellants point out that the complaints in *Fitzsimmons II* and *Aronow* contain identical allegations concerning appellants' liability, and differ only with respect to the allegations concerning damages. However, that fact alone does not establish an identity of issues sufficient for res judicata to apply. Our opinion in *Fitzsimmons II* states that "the issues on probable cause in the two cases [*Fitzsimmons II* and *Aronow*] were different. In the Aronow case the issue was whether Edward LaCroix and Joseph Schumb had probable cause to believe that a lawsuit lay against Aronow; in the case at hand the issue was whether probable cause existed for a lawsuit against Dr. [Ann] Fitzsimmons. Probable cause patently may have existed against one, and not the other." (Italics deleted.)

Appellants point out additional phenomena, not noted in our *Fitzsimmons II* opinion. The *Fitzsimmons II* jury's findings of fact in its responses to the interrogatories submitted to it explicitly applied equally to Dr. Ann *and* to Aronow, and no basis exists for reaching different conclusions of law based on those facts, with respect to Dr. Ann on the one hand and to Aronow on the other. Further, the jury found that appellants had reasonable grounds to believe that Dr. Ann and Aronow had conspired with each other to do the acts which formed the basis for each of the four theories of recovery alleged in *Bailey II*, other than slander, and that appellants honestly believed that they had such reasonable grounds. Although there is no separate tort of conspiracy, the jury's findings as to conspiracy are significant because of the rule that each member of a civil conspiracy "may be held responsible as a joint tortfeasor, regardless of whether or not he directly participated in the act." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 44, p. 107, citing 21 cases; accord *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45].) Specifically, "[a]ttorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy." (*Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206, 1211 [197 Cal.Rptr.

446], as limited by *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 46 [260 Cal Rptr. 183, 775 P.2d 508].) Thus, the jury's findings, with respect to a conspiracy theory, demonstrated that appellants were justified in prosecuting *Bailey II* against Aronow under each of the four theories of recovery which the jury considered, even in the absence of probable cause to believe that Aronow personally did the tortious acts alleged in connection with each of those theories of recovery. With respect to the four theories of recovery in question, the *Fitzsimmons II* judge and jury did decide the issues posed by *Aronow,* unfavorably to Aronow.

The question remains, whether the *Fitzsimmons II* court decided the issue posed by *Aronow* with respect to the slander theory of recovery in *Bailey II* when the court granted a nonsuit after Dr. Ann's offer of proof. That issue, of course, was whether appellants acted with malice toward Aronow in pursuing their slander theory of recovery in *Bailey II.*[4]

The determination of the *Fitzsimmons II* trial court on this point appears in the court's memorandum of decision, order and judgment filed January 27, 1981. The court determined "that the evidence is insufficient to warrant presenting to the jury the issue whether the defendants LaCroix and Schumb acted with malice in the filing of the [slander count] in [*Bailey II* ]." This broadly worded language is reasonably interpreted as a determination, in harmony with the earlier determinations as to probable cause for the other four theories of recovery asserted in *Bailey II,* that appellants harbored malice toward neither Dr. Ann nor Aronow in prosecuting the slander theory of recovery.

Aronow does not contend otherwise. Appellants correctly note in their reply brief that Aronow's opposition to appellants' claim-preclusion arguments focuses exclusively on the question of privity, tacitly conceding that the requirements of a final judgment on the merits determining identical issues have been fulfilled. ▮▮▮▮ We must, perforce, next consider whether this final requirement for claim preclusion has been fulfilled.

Privity is not susceptible of a neat definition, and determination of whether it exists is not a cut-and-dried exercise. (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 947 [119 Cal.Rptr. 139].) In the final analysis, the privity question, under current case law, simply depends on a

---

[4] An action for malicious prosecution lies when but one of several theories of recovery asserted in a failed lawsuit is asserted without probable cause and with malice. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 57, incl. fn. 5; *Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 644, & fn. 12 [224 Cal.Rptr. 865], disapproved on another ground in *Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at pp. 882-883, & fn. 9.)

determination of whether, in light of competing policy considerations, it is fair to saddle Aronow with the result obtained in a lawsuit in which she did not personally participate throughout. (*Clemmer* v. *Hartford Insurance Co., supra,* at p. 875.) "The question is whether [Aronow] is sufficiently close to [*Fitzsimmons II* ] to afford application of the principle of preclusion." (*People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773], with designations changed to fit the facts of the present case, quoted in *Ceresino* v. *Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 821 [264 Cal.Rptr. 30] and in *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622, 630 [174 Cal.Rptr. 527].)

Aronow contends that giving the judgment in *Fitzsimmons II* a preclusive effect in *Aronow* violates due process of law, unless Dr. Ann, in her prosecution of *Fitzsimmons II,* adequately represented Aronow's interests, and that Dr. Ann did not adequately represent her interests. The first part of Aronow's contention is correct. Due process of law does require that Dr. Ann's prosecution of *Fitzsimmons II* adequately represented Aronow's interests for *Fitzsimmons II* to have a preclusive effect in the present case. (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 875.) How does a court measure the adequacy of one party's representation of another's interests? ▮ Published appellate opinions typically determine the question of adequate representation by inference, examining whether the losing party in the suit which is asserted to have a preclusive effect had the same interest as the party to be precluded, and whether that losing party had a strong motive to assert that interest. If the interests of the parties in question are likely to have been divergent, one does not infer adequate representation and there is no privity. (*Id.,* at p. 877; *Courtney* v. *Waring* (1987) 191 Cal.App.3d 1434, 1445-1446 [237 Cal.Rptr. 233].) If the losing party's motive for asserting a common interest is relatively weak, one does not infer adequate representation and there is no privity. (*Leader* v. *State of California* (1986) 182 Cal.App.3d 1079, 1087 [226 Cal.Rptr. 207].) The cases do not undertake to measure the adequacy of the representation on the basis of an assessment of the performance of the losing party's counsel. We shall follow suit, disregarding Aronow's criticism of the way Dr. Ann's attorney prosecuted *Fitzsimmons II.*

▮ In the present case, the interests of Dr. Ann and Aronow in prosecuting their respective suits were the same, to prove the elements of malicious prosecution with respect to *Bailey II,* to enable them to recover money.[5] (See *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies*

---

[5] To the extent that *Courtney* v. *Waring, supra,* 191 Cal.App.3d at page 1446, suggests that speculation "on financial or other considerations unique to [Dr. Ann's] position which may have constrained the prosecution [of *Fitzsimmons II* ] or influenced tactical decisions" can

*Associated, Inc., supra,* 120 Cal.App.3d at p. 630.) Further, because *Bailey II* proceeded on a conspiracy theory, Dr. Ann and Aronow each had as strong an interest in proving a lack of probable cause and the existence of malice with respect to the other as with respect to herself.[6] Nor was there any disparity in the amounts they hoped to recover which would have given Dr. Ann a significantly lesser motive to prosecute her suit with vigor than Aronow had to prosecute hers. Their respective complaints contained identical prayers for $500,000 general damages and $2 million punitive damages. An inference that Dr. Ann adequately represented Aronow's interests in her prosecution of *Fitzsimmons II* is fully justified.

Aronow contends that the judgment in *Fitzsimmons II* cannot have preclusive effect unless she should reasonably have expected to be bound by the result in *Fitzsimmons II,* and notes that appellants make no separate argument to the effect that she should have entertained such an expectation. Aronow further contends that giving the judgment in *Fitzsimmons II* a preclusive effect in *Aronow* violates due process of law, unless Aronow had the power to control how Dr. Ann prosecuted *Fitzsimmons II,* and that she did not have such power. The general rule applicable to Aronow's contentions is that one who has a proprietary or financial interest in and controls the conduct of a lawsuit should expect to be, and can be, bound by the result reached in that lawsuit, even though not a party. (*Lynch* v. *Glass, supra,* 44 Cal.App.3d at p. 949.) Such control, however, need not be complete. (*Ceresino* v. *Fire Ins. Exchange, supra,* 215 Cal.App.3d at p. 821.) And, preclusion can apply even in the absence of such control, as in *People ex rel. State of Cal.* v. *Drinkhouse, supra,* 4 Cal.App.3d 931, where two out of three civil defendants suffering the preclusive effect of a criminal judgment of conviction were not parties to the criminal case, had no proprietary or financial interest in the criminal case, and had no control over the prosecution or defense of the criminal case. (See also *Lewis* v. *County of Sacramento* (1990) 218 Cal.App.3d 214, 218-219 [266 Cal.Rptr. 678].)

Appellants accurately contend that Aronow "had control, in every sense, of her own case." That control, however, is beside the point. The question is what power, if any, Aronow had to control Dr. Ann's case. During the time the two cases were consolidated Aronow was both a coplaintiff with Dr. Ann and cocounsel with Dr. Ann's attorney. Aronow at least had the power

---

form the basis for a conclusion that Dr. Ann and Aronow are likely to have had divergent interests, we decline to follow *Courtney.*

[6] During the course of trial in the present case, the trial judge stated, "The court . . . finds that the plaintiff [Aronow] had an interest, a community of interest in . . . Fitzsimmons Two." Aronow asked, "May I have a clarification there. Do I understand that you found that I had an interest, any kind of interest?" The judge responded, "Yes, I do. I find you had a community of interest in . . . the suit by Dr. Ann Fitzsimmons filed in the same period of time that you filed your suit."

to suggest courses of action which she believed would be to the mutual benefit of both herself and Dr. Ann. Indeed, Aronow acknowledges that she wielded her power to make such suggestions, while complaining that Dr. Ann's attorney rejected her opinions.

Aronow makes specific contentions concerning the conduct of the *Fitzsimmons II* trial in support of her argument that to hold her bound by the result in *Fitzsimmons II* would be unfair and a denial of due process of law. On our own motion, we take judicial notice of the record on appeal in *Fitzsimmons II,* for the purpose of assessing these specific contentions. (Evid Code, §§ 452, subd. (d)(1), 459, subd. (a).)

Aronow claims that the trial judge in *Fitzsimmons II* ruled that she could not act as her own attorney and held her "in contempt for attempting to represent myself." The record in *Fitzsimmons II* does not support this claim. What the record shows is that the *Fitzsimmons II* trial judge was fully appreciative of the triple capacity in which Aronow functioned during the trial—litigant, attorney, and witness. For example, when Aronow interjected a remark during the trial, he asked whether she was making an objection, recognizing her right to object in her capacity as an attorney. Nor did the judge curtail Aronow's right to participate as an attorney during the time she was testifying as a witness for Dr. Ann. When, however, Aronow was on the witness stand and answered questions with non-responsive monologues, the judge properly sustained objections to those monologues and admonished Aronow to answer responsively. When Aronow refused to obey the judge's admonitions, and asserted (in an in-chambers conference) her intent to continue testifying as she wished,[7] he held her in contempt, three times. These contempt citations did not spring from the judge's refusal to recognize Aronow's right to serve as her own attorney, as Aronow argues, but from her intransigent insistence on testifying as she pleased, no matter what the question posed to her called for.

The circumstances surrounding Aronow's citations for contempt not only offer no support for Aronow's contention that she was not allowed to act as her own attorney in *Fitzsimmons II.* They also demonstrate that for a time Aronow exercised virtually complete control over one part of the evidence presented during the trial of *Fitzsimmons II* —the testimony which came out of her own mouth—in spite of efforts by court and counsel to limit that control.

The *Fitzsimmons II* trial judge admitted the testimony of an expert witness on the issue of probable cause. Aronow contends that such admission

---

[7] "Your honor, I don't care what you think of me. You can throw me in jail if you want to, but I tell you right now, Your Honor, that he [counsel for LaCroix and Schumb] is not going to prevent me from testifying. I am going to testify, regardless [of the sustained objections]."

was error, and that "[t]his error alone required reversal." Again, the first part of Aronow's contention is correct. "[E]xpert testimony is improper and incompetent on the issue of probable cause." (*Leonardini* v. *Shell Oil Co., supra*, 216 Cal.App.3d at p. 582.) But Aronow makes no suggestion as to how the error could have affected the result in *Fitzsimmons II.* As noted above, the question of whether appellants had probable cause to pursue *Bailey II* was a legal question which the *Fitzsimmons II* trial judge answered. Aronow makes no contention that the judge's answer was wrong. Aronow suggests no theory under which the expert testimony in question could have influenced the jury to make errors in its fact finding. We have no basis on which to conclude that the error could have influenced the result in *Fitzsimmons II* in the slightest. It was harmless (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), and engenders no unfairness in holding Aronow bound by the *Fitzsimmons II* result.

At oral argument, Aronow suggested that granting a mistrial as to her guaranteed her a separate trial of her own which would produce a result unaffected by the *Fitzsimmons II* result. Our examination of the *Fitzsimmons II* record reveals no such guarantee, explicit or implicit. Aronow does not suggest, nor are we aware of, any rule of law which would imply such a guarantee. This point has no merit.

Aronow obviously enjoyed something significantly less than the power to control *Fitzsimmons II.* On the other hand, she was far from a stranger to the case. We conclude that if strong reasons exist to give *Fitzsimmons II* claim-preclusive effect, Aronow's connection with the case, though falling short of the power to control, was so close that she should reasonably expect to be bound by the result in that case.

We note the policy considerations which weigh in favor of applying the doctrine of preclusion—the promotion of judicial economy by minimizing repetitive litigation, the prevention of inconsistent judgments which undermine the integrity of the judicial system, and the protection of innocent defendants against the vexation of having repeatedly to defend against the same claim brought by successive plaintiffs. (*Clemmer* v. *Hartford Insurance Co., supra*, 22 Cal.3d at p. 875.) Taking a restrictive view, we see that sustaining appellants' res judicata contention in the present case will serve none of these policy interests. The judicial system has already borne the burden of repetitive litigation. Inconsistent judgments have already been entered. Appellants have already been vexed by the defense of successive lawsuits.

Taking a broader view, we conclude that policy considerations strongly support application of the doctrine of claim preclusion in the present case.

Reversal on res judicata grounds (rather than on other grounds which appellants urge) will put an end to the repetitive litigation. It will eliminate the inconsistent judgments. To the extent that prospective litigants take note of such a reversal, it will discourage vexation through successive lawsuits asserting the same claims. Most important among these considerations is the elimination of inconsistent judgments. (See *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc., supra,* 120 Cal.App.3d at p. 631, incl. fn. 7.) Such judgments constitute "the very situation sought to be avoided by the expanded definitions of privity" currently in effect. (*Ceresino* v. *Fire Ins. Exchange, supra,* 215 Cal.App.3d at p. 822.) "It would be anomalous to deny recovery to [Dr. Ann] but to award damages to [Aronow] based on the same set of facts and legal issues." (*Evans* v. *Celotex Corp.* (1987) 194 Cal.App.3d 741, 746 [238 Cal.Rptr. 259].)

*Fitzsimmons II* does operate to preclude Aronow from a judgment in her favor in her own case.

### *Aronow's Motion for Augmentation*

On November 8, 1989, Aronow filed a motion to augment the record with 12 documents which relate to the April 3, 1980, settlement of *Lackner II* for $20,000. Aronow states that her "motion is based on the fact that appellants' payment of $20,000.00 to Dr. Lackner without obtaining a release from him constitutes an admission of liability to Dr. Lackner, and that such admission operates by collateral estoppel to establish liability against appellants in this case brought by Aronow."

We deem Aronow's motion to augment to be a request for judicial notice and grant it on that basis. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); *People* v. *Bautista* (1970) 6 Cal.App.3d 344, 348-349 [85 Cal.Rptr. 688].) Although Aronow raises her point concerning the preclusive effect of a settlement months after briefing in the case has been completed, we elect to deal with her argument on its merits. (See Gov. Code, § 68081.) **(9)** Although an admission by a party may be admissible as evidence of liability, under Evidence Code section 1220 (but see Evid. Code, § 1152), such evidence does not, as Aronow contends, conclusively establish liability, as a matter of law. Only final judgments and orders have preclusive effect. The only judgment entered in *Lackner II* was a judgment of dismissal. A judgment dismissing a complaint can not operate to establish a defendant's liability, and Aronow's argument therefore fails.

### *Sufficiency of the Evidence*

Appellants assert, as additional grounds for reversal, that erroneous rulings by the trial court denied them a fair trial, and that the trial court's

findings as to lack of probable cause and malice are without substantial evidentiary support. In light of our acceptance of appellants' argument as to the preclusive effect of *Fitzsimmons II,* no need exists to deal with these contentions.

We deem Aronow's motion to augment the record a request for judicial notice and grant it. We reverse the judgment and direct the trial court to enter judgment for appellants. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439].)

Newsom, Acting P. J., and Stein, J., concurred.

A petition for a rehearing was denied May 24, 1990, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 15, 1990.