**In re Dennis Love RUSSELL; Barbara Jean Russell, Debtors.**

**FIRST NATIONAL BANK, Appellant,**

v.

**Dennis Love RUSSELL; Barbara Jean Russell, Appellees.**

No. 94–55893.

United States Court of Appeals, Ninth Circuit.

Submitted * December 14, 1995.

Filed February 6, 1996.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Jennifer M. Kelly, Hilding & Kelly, San Diego, California, for appellant.

John S. Huiskamp, Duke, Gerstel, Shearer & Bregante, San Diego, California, for appellees.

Before: HUG, BEEZER, and KLEINFELD, Circuit Judges.

HUG, Circuit Judge:

First National Bank appeals the Bankruptcy Appellate Panel's ("BAP") decision to reinstate the civil rights action of Dennis and Barbara Russell. The BAP reversed the bankruptcy court's determination that *res judicata* and collateral estoppel barred the couple's civil rights claim against First National. *In re Russell (Russell v. First National Bank)*, 166 B.R. 901, 905 (9th Cir. BAP 1994). We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we reverse.

## I. FACTS

In 1985, First National Bank provided Dennis Russell's concrete contracting company, Den–Ed Russell, Inc. ("Den–Ed"), a line of credit. The line of credit was renewed many times and eventually increased to $1 million. In 1991, the revolving line of credit was revised and included a $300,000 term loan and a $700,000 promissory note. In addition to the corporate loans made to Den–Ed, First National made personal loans to Dennis and Barbara Russell and the Dennis L. Russell and Barbara J. Russell Trust ("Trust"). Over the years, First National requested and received various guaranties for the loans, including cross-default provisions. The cross-default provisions stated that in the event of a default on any of the loans, all of the loans would be considered in default, meaning that each guarantor would be liable. The guarantors for the Den–Ed loans included the Russells, the Trust, and another corporation owned by the Russells, Sea Pacific Corporation ("SPC"). Furthermore, First National obtained security for the loans in the form of certain real properties owned by the Russells and Den–Ed.

In 1991, First National declared the Den–Ed loan in default, and this triggered the cross-default provisions. First National gave written notice to Den–Ed's guarantors (the Russells, the Trust, and SPC) that their liability had been triggered. Accordingly, First National requested that the guarantors assemble and provide the necessary monies and collateral in accordance with the cross-default provisions. Den–Ed and its guarantors refused, arguing that First National's actions were unlawful.

First National sued in California state court for collection of indebtedness and for judicial foreclosure of real and personal property. Den–Ed and the Russells subsequently initiated Chapter 11 bankruptcy proceedings, thus triggering the automatic stay of all foreclosure and indebtedness actions against them. First National filed motions with the bankruptcy court for relief from the stay, asking the court to allow them to proceed with their state foreclosure suit. The bankruptcy court granted First National relief from the automatic stay without limitation in the Den–Ed Chapter 11 proceeding, and granted limited relief from the stay in the Russells' case. The bankruptcy court stated:

[First National] is hereby granted relief from the automatic stay to proceed with its state court litigation matter ... against these debtors and this estate and to judicially foreclose in accordance with state law on its collateral and on all interests in that collateral held or claimed by these debtors and this estate. The state court litigation proceedings against the debtors and this estate may proceed through the judicial sale of the applicable collateral, but thereafter the automatic stay shall be in effect as to further proceedings against the debtors and this stay.

The California state court interpreted the above order to apply only to Den–Ed, the Trust, and SPC, and not to apply to the Russells. Consistent with this interpretation, the state court entered a judgment, stipulated to by all parties, in favor of First National against Den–Ed, the Trust, and SPC on the loans. It expressly stated that "this judgment does not address [the Russells'] personal liability for the indebtedness reflected by the [loans] ... The court shall retain jurisdiction to determine the amount of a deficiency for which they may be liable, in the event they lose the protection of the automatic stay in bankruptcy." *First National Bank v. Den–Ed Russell, Inc.,* No. 649013, 6 (Cal.Super.Ct. Feb. 26, 1993). The court did, however, allow First National to foreclose on the Russells' real property that was used as collateral for the loans.

Subsequently, the Russells filed a civil rights adversary proceeding under 42 U.S.C. § 1981 in bankruptcy court seeking $10,000,000 in damages from First National. The Russells allege that First National's loan officer conspired to financially ruin them because of her hatred of blacks. Specifically, the Russells claimed that the loan officer "formulated a plan to use her position in the administration of the [Russells'] account to cause [First National] to change the manner in which the line of credit was administered" so as to financially ruin the Russells.

First National filed a motion to dismiss the Russells' claim on *res judicata* and collateral estoppel grounds. The bankruptcy court granted the motion and dismissed the claim with prejudice, holding that the Russells were precluded from raising the civil rights claim because of the previous state court judgment against the entities that the Russells controlled. The bankruptcy court reasoned that because the state court judgment was rendered against entities that the Russells completely controlled, and because the Russells were in privity with these entities, the state court judgment applied equally to them. The Russells appealed the bankruptcy court's dismissal of their claim to the BAP which reversed the bankruptcy court. The BAP reasoned that because the state court judgment specifically excluded the Russells from its judgment, it would be unfair to apply the doctrine of *res judicata* and collateral estoppel against them. The BAP also reasoned that during the state court proceeding the Russells had little incentive to pursue the civil rights claim because their action was still subject to the automatic stay.

## II. DISCUSSION

We review both *res judicata* and collateral estoppel claims *de novo*. See *Pardo v. Olson & Sons, Inc.,* 40 F.3d 1063, 1066 (9th Cir.1994) (collateral estoppel); *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032 (9th Cir.1994) (*res judicata*), cert. denied, — U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Because the underlying judgment was rendered in state court, we must apply California's *res judicata* and collateral estoppel principles. *Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir. 1988). The cause of action brought in state court was different from that brought in bankruptcy court. Therefore we are only concerned with the collateral estoppel aspect of *res judicata. In re Joshua J. (San Diego County Dep't. of Social Serv. v. James J.),* 39 Cal.App.4th 984, 46 Cal.Rptr.2d 491, 496–97 (Ct.App.1995). Under California law, "[a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the

previous suit." *Id.* 46 Cal.Rptr.2d at 497 (citation omitted).

■ First National argues that because the state court litigation determined that the loans were enforceable and in default and that First National was entitled to foreclose on Den–Ed, SPC, the Trust, and the Russells' collateral, the Russells are now precluded from claiming that the default was procured by unlawful means. The Russells counter by arguing that because the state court judgment explicitly excluded them from its strictures, it would be unfair to apply *res judicata* and collateral estoppel in this case. We agree with the bankruptcy court and hold that the California state court proceeding collaterally estops the Russells from litigating their civil rights action against First National.

■ In California, a party can be compelled to raise a tort claim in defense of a related contract suit, *Sylvester v. Soulsburg*, 252 Cal.App.2d 185, 60 Cal.Rptr. 218, 223 (1967), and failure to raise a related cause of action in a cross-complaint will prevent that person from asserting that related claim in a subsequent suit. Cal.Civ.Proc.Code § 426.30 (West 1973); *Crocker Nat'l Bank v. Emerald*, 221 Cal.App.3d 852, 270 Cal.Rptr. 699, 705 (1990). Although the Russells did not raise their civil rights claim in state court, they argue that they should not be estopped from pursuing their civil rights action in bankruptcy court because the terms of the state court judgment specifically exclude the Russells in their personal capacity.

■ We are not persuaded that the state court's language excluding the Russells from its scope defeats California's collateral estoppel doctrine. In California, a judgment may be binding on persons who, though not parties to the judgment, are in privity with a party to the judgment. *Armstrong v. Armstrong*, 15 Cal.3d 942, 126 Cal.Rptr. 805, 810, 544 P.2d 941, 946 (1976). California courts find privity where one party so identifies with another that he represents the same legal right. *People v. Drinkhouse*, 4 Cal. App.3d 931, 84 Cal.Rptr. 773, 776 (1970). Furthermore, California Code of Civil Procedure section 1908(b) states:

A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction; if the other party has notice of his participation, the other party is equally bound.

Cal.Civ.Proc.Code § 1908(b) (West 1983).

In the present case, we conclude that the state court judgment was a final judgment on the merits with regard to entities that the Russells completely controlled. The state judgment concerned identical issues to those brought in the civil rights claim, namely the legality of the debts. It adjudged that the Trust, SPC, and Den–Ed were in default of their loans to First National and it allowed First National to begin foreclosure proceedings against the property owned by the Russells that was used as collateral for the loans.

Because the Russells are in privity with these entities, we conclude that the state court judgment applies equally to them. The Russells completely control Den–Ed, SPC, and the Trust. Therefore the Russells had a full and fair opportunity to present their civil rights claims in the state court proceeding. The Russells also had a strong financial stake in the proceedings. It is true that the Russells' personal liability for the deficiency of the foreclosures on their real property has not been adjudged. However, it has been conclusively adjudicated that the loans by First National are valid, that the loans are in default, and that First National can foreclose on the Russells' property. These issues cannot be relitigated by the Russells.

We disagree with the BAP that *Manning v. Wymer*, 273 Cal.App.2d 519, 78 Cal.Rptr. 600 (1969), mandates a different result. In *Manning*, the parties to a stipulated judgment agreed that the judgment would not have preclusive effect to a reserved cross-claim. The California appellate court ruled that this agreement prevented the plaintiff from being barred through collateral estoppel from raising the reserved cross-claim in a separate proceeding. *Id.* 78 Cal.Rptr. at 605.

We find *Manning* inapposite to the Russells' current claims. Unlike *Manning*, the Russells did not specifically reserve the right to initiate a separate lawsuit. The state court judgment notes that the Russells' individual liability had not been determined. However, it did not specifically reserve the civil rights claim—a claim that applies equally to Den–Ed, SPC, and the Trust—for future adjudication. Furthermore, *Manning* did not involve a situation where the individuals were in privity with the entities who were finally adjudicated against. We do not read *Manning* to allow an individual "two bites of the apple" in situations such as these. The Russells represented four entities, including themselves, at the state court proceeding. By agreeing not to determine the Russells' individual liability, the state court did not refuse to determine the legality of the default or the ability of First National to collect against the Russells' individual property that was supplied as collateral. We hold that the Russells' claims are barred.

*REVERSED.*