FILED

NOV 27 2024

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DR. ROOTS HERBS, LLC,<br><div align="center">Debtor.</div> | BAP Nos. CC-24-1058-SGC<br>CC-24-1092-SGC<br>(Related appeals) |
| GRETA SEDEAL CURTIS,<br><div align="center">Appellant,</div><br>v.<br>AMMEC INVESTMENTS II, INC.;<br>SISTERS IN LAW, LLC; DR. ROOTS<br>HERBS, LLC; VINCENT THAMES;<br>ROBERT ANTHONY BROWN;<br>CHARLES HASBUN; SALEH HASBUN,<br><div align="center">Appellees.</div> | Bk. No. 2:23-bk-10375-BR<br><br>Adv. No. 2:23-ap-01116-BR<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Barry Russell, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and CORBIT, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

# INTRODUCTION

Appellant Greta Curtis is the sole owner and managing member of chapter 7[1] debtor Dr. Roots Herbs, LLC ("Debtor"). Appellee Ammec Investments II, Inc. ("Ammec") commenced an adversary proceeding against Curtis, Debtor, and others to declare void several transfers of real property. Prepetition, Ammec obtained a state court judgment voiding its deed initially conveying the real property to an entity controlled by Curtis. The property was subsequently transferred from the initial transferee to Debtor and then Curtis. Ammec argued in the adversary proceeding that because the first property transfer had been voided, all subsequent transfers of that property, including the transfers to Debtor and Curtis, were likewise void. The bankruptcy court agreed with Ammec and entered summary judgment in its favor. The bankruptcy court additionally dismissed with prejudice Curtis' first amended crossclaims.

Curtis appeals from both the summary judgment and the dismissal of her first amended crossclaims. However, her arguments pertain to matters beyond the scope this appeal, lack merit, or both. Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

**FACTS[2]**

**A.      The parties and the property transfers.**

Curtis formerly was a licensed attorney authorized to practice law in California. She was disbarred in 2014 for misappropriation of client funds among other things. According to Ammec, at the time she was disbarred, Curtis was representing Ammec and related defendants in a state court lawsuit.[3] Ammec claims that without its knowledge, Curtis continued her legal services even after she was suspended from the practice of law or disbarred.

In May 2014, at Curtis' behest, Ammec executed a grant deed in favor of Sisters in Law, LLC ("Sisters"). Like Debtor, Sisters is a limited liability company that Curtis owns and controls. This deed was recorded within several days of its execution ("Ammec/Sisters Deed"). Ammec conveyed to Sisters a 5.774% interest in two parcels of Los Angeles real property: (1) a multiple-unit residence on Compton Avenue; and (2) a vacant lot on East First Street (jointly, the "Property"). The acknowledged purpose of the Ammec/Sisters Deed was to compensate Curtis for legal services she rendered to Ammec.

---

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Curtis represented Ammec in *Ruth Light v. Baypoint Mortgage, Inc., Ammec, Inc., et al.*, LASC Case No. BC476061 ("*Ruth Light* Action").

Shortly after execution of the Ammec/Sisters Deed, Curtis conveyed the Property from Sisters to Debtor by grant deed ("Sisters/Roots Deed"). The Sisters/Roots Deed was recorded in January 2015. Curtis also executed on behalf of Debtor a deed of trust in favor of Vincent Thames dated May 5, 2016, encumbering the Property to secure a purported debt of $150,000 ("Thames Deed of Trust"). This deed of trust was notarized and recorded several months later—in December 2016.

In February 2017, Curtis again conveyed the Property—this time from Debtor to herself ("Roots/Curtis Deed"). Curtis never recorded the Roots/Curtis Deed. According to Ammec, the Roots/Curtis Deed was the first part of a two-part straw-conveyance transaction. As Curtis admitted in a declaration she filed in the adversary proceeding, she executed another unrecorded deed immediately conveying the Property back to Debtor. This fourth conveyance was not addressed in Ammec's adversary complaint, but the bankruptcy court's judgment avoided this fourth conveyance as well (the "Curtis/Roots Deed"). Curtis' appeal brief did not address the Curtis/Roots Deed.

**B.    The state court lawsuit, its disposition, and Curtis' failed attempt to appeal on behalf of Sisters.**

The transactions between Curtis and Ammec spawned several state court lawsuits. But only one of these lawsuits is relevant to these appeals. In February 2016, Ammec sued Curtis, Debtor, and Sisters in state court for fraud, breach of fiduciary duty, negligence, and quiet title. The quiet title

4

cause of action additionally requested declaratory relief to cancel and void the Ammec/Sisters Deed. Ammec voluntarily dismissed the breach of fiduciary duty and negligence causes of action. The court then bifurcated the fraud claim from the fourth cause of action seeking both to quiet title and cancel the Ammec/Sisters Deed. Ammec tried its fraud claim against Curtis to a jury. The jury specifically found that Curtis failed to disclose certain information to Ammec with the intent to deceive. But the jury entered its verdict in favor of Curtis because it also found that Ammec did not rely on the nondisclosure or suffer any damages.

The court then proceeded to hold a bench trial on Ammec's remaining claim.[4] At the beginning of the trial, the court noted that neither Curtis nor Debtor had appeared in person though both had been instructed to do so. Curtis appeared by phone, while Debtor appeared through counsel by video. On Ammec's motion, the court dismissed without prejudice both Curtis and Debtor from the fourth cause of action. The court then conducted a non-jury trial on the fourth cause of action as against Sisters only, which had been defaulted.[5] This effectively narrowed the

---

[4] That the state court held a trial is beyond cavil. The first two pages of its Statement of Decision refer to the court holding "trial" on the fourth cause of action no less than five times. The state court's decision to hold trial despite the default of Sisters—ultimately the only remaining defendant—is presumably a function of California law prohibiting disposition of quiet title actions by default judgment. *See Nickell v. Matlock*, 206 Cal. App. 4th 934, 943-44 (2012).

[5] In its Statement of Decision, the state court further referenced the remarks of Debtor's counsel, Eric O. Ibisi, who stated that "he had a motion pending for relief from

matter being tried from a broader quiet title action to cancellation of the Ammec/Sisters Deed. Ammec prevailed.

In January 2022, the state court entered judgment declaring the Ammec/Sisters Deed void and contemporaneously issued its Statement of Decision, which is specifically referenced in the judgment. Consistent with its dismissal of Debtor and Curtis at the beginning of the bench trial, the state court focused exclusively on the part of the fourth cause of action seeking to cancel the Ammec/Sisters Deed. It found that Ammec's principal executed the Ammec/Sisters Deed "to pay attorney's fees to Curtis" for legal services Curtis rendered in the *Ruth Light* Action.[6] The court further found that Curtis failed to prepare any sort of written fee agreement between herself and any of the multiple defendants she agreed to represent in that lawsuit. Nor did she disclose any actual or potential conflicts of interest among her multiple clients.

Based on these factual findings, the state court concluded that Curtis had violated Rule 3-310(c)(3) and Rule 3-300 of the California Rules of Professional Conduct ("CRPC") directed at avoiding interests adverse to a

---

default by defendant, Sisters LLC." The court declined to rule on the motion to set aside the default, saying that the only matter on calendar for that day was the bench trial of Ammec's cancellation of instrument claim.

[6] According to the Statement of Decision, Ammec's principal testified at trial that Curtis threatened that if he did not sign the Ammec/Sisters Deed, she would "lay down" at trial.

6

client.[7] The state court then declared the deed void based on Ammec's election to void it under *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.,* 6 Cal. 5th 59 (2018), and *Fletcher v. Davis*, 33 Cal. 4th 61 (2004).

Curtis purported to file an appeal on behalf of Sisters. Ammec moved to dismiss that appeal arguing that Curtis as a disbarred attorney could not legally commence and prosecute an appeal on behalf of Sisters. Ammec additionally asserted that Sisters was at the time a suspended California limited liability company. The California Court of Appeal granted Ammec's motion to dismiss the appeal, and the state court's judgment avoiding the Ammec/Sisters Deed thereby became final.

## C. Debtor files bankruptcy, and Ammec commences its adversary proceeding.

In January 2023, Curtis filed a chapter 11 petition on behalf of Debtor. In Debtor's Schedule A/B, she listed the Property as owned by Debtor notwithstanding the Roots/Curtis Deed. But she did not list Thames as one of Debtor's secured or unsecured creditors, even though the Thames Deed of Trust suggested otherwise.

In April 2023, Ammec commenced an adversary proceeding against

---

[7] Former CRPC Rule 3-310(c)(3) (now CRPC Rule 1.7) precludes an attorney from representing clients adverse to each other in the same matter without informed written consent. Former CRPC Rule 3-300 (now CRPC 1.8.1) precludes attorneys from entering into any business transaction with a client, or acquiring an interest adverse, unless certain written disclosures are made and documentation obtained.

Sisters, Debtor, Curtis, and Thames. The complaint's three claims for declaratory relief respectively sought determinations that the Sisters/Roots Deed, the Roots/Curtis Deed, and the Thames Deed of Trust (collectively, the "Downstream Transfers") were "void and cancelled" under Cal. Civ. Code § 3412.[8]

After Debtor and Curtis unsuccessfully moved to dismiss the adversary proceeding, they filed an answer and crossclaims. But Sisters and Thames did not appear, and the bankruptcy court entered Sister's default. In relevant part, "Count I" of Curtis' amended crossclaims sought a determination that the Ammec/Sisters Deed was not invalid.[9]

In August 2023, Ammec moved to dismiss Curtis' first amended crossclaims with prejudice. After considering the parties' papers and holding a hearing, the bankruptcy court granted the motion to dismiss.

## D. The parties' cross-motions for summary judgment and the bankruptcy court's decision.

In February 2024, Ammec moved for summary judgment. According

---

[8] Cal. Civ. Code § 3412 states: "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

[9] "Count II" and "Count III" of Curtis' amended crossclaims respectively sought a determination that Ammec (and others) could not avoid the Sisters/Roots Deed or the Thames Deed of Trust. But these causes of action were premised on the continuing validity of the Ammec/Sisters Deed, and they are not separately and distinctly discussed in Curtis' appeal brief. Nor are her other crossclaims for abuse of process, malicious prosecution, slander of title, fraud, and such.

to Ammec, the subsequent Downstream Transfers were equally as invalid as the Ammec/Sisters Deed. It maintained that the bankruptcy court could enforce the state court judgment against Curtis and Debtor based on the Full Faith and Credit Act, 28 U.S.C. § 1738, and Cal. Code of Civil Procedure ("CCP") § 1908. Ammec argued that in light of the state court judgment voiding the Ammec/Sisters Deed, the Downstream Transfers were valid only to the extent that the transferees could establish they qualified as bona fide purchasers in good faith, for value, and without notice of the infirmity that led the state court to declare void the Ammec/Sisters Deed.

The infirmity at issue was Curtis' violation of CRPC Rules 3-300 and 3-310(c)(3), as addressed in the state court's decision. Because the Ammec/Sisters Deed had been voided due to Curtis' ethics breaches, Ammec argued that Debtor's and Curtis' actual or constructive knowledge of Curtis' unethical conduct—and the lack of consideration given for the Downstream Transfers—conclusively demonstrated that neither Debtor nor Curtis qualified as bona fide purchasers for value and hence rendered the Downstream Transfers voidable as well under Cal. Civ. Code § 3412.

Curtis and Debtor jointly opposed Ammec's summary judgment motion. They asserted that issue preclusion, claim preclusion, California tax law, equitable estoppel, various statutes of limitation, and the parol evidence rule all barred Ammec from voiding the Downstream Transfers. They further attempted to attack, in myriad ways, the state court judgment

voiding the Ammec/Sisters Deed. They asserted that the state court judgment was obtained by fraud, violated several principles of substantive California law,[10] and was unenforceable as against Curtis because she was dismissed from the state court action before the trial of the fourth cause of action. They further maintained that Ammec could not properly invoke issue preclusion in support of its summary judgment motion.

Curtis and Debtor also moved for summary judgment. But the contents of their joint summary judgment motion merely reiterated many of the same points set forth in their opposition to Ammec's summary judgment motion.

The bankruptcy court held a hearing on the cross-motions for summary judgment in April 2024. After considering the arguments both sides presented, the bankruptcy court rejected Curtis' arguments and adopted Ammec's arguments. The bankruptcy court did not specify exactly why Ammec was entitled to summary judgment—and Curtis and Debtor were not. Instead, it broadly stated that it agreed with Ammec's positions and disagreed with Curtis' and Debtor's positions.

---

[10] Most of the principles of California law Curtis and Debtor cited to attack the state court judgment were the same ones they invoked in defense against Ammec's action to invalidate the Downstream Transfers. But they additionally asserted that Ammec should not have prevailed on its state court "quite title" cause of action because it had not demonstrated that it held title to the Property at the time it filed its state court lawsuit. Aside from the obvious problem that full faith and credit principles bar us from looking behind the state court judgment, their "quiet title" argument fails because Ammec prevailed on its request for relief to declare the Ammec/Sisters Deed void and cancelled. It did not obtain relief quieting title.

On April 16, 2024, the bankruptcy court entered judgment in favor of Ammec on all three counts stated in Ammec's adversary complaint and declared void and cancelled the Sisters/Roots Deed, the Roots/Curtis Deed, the Thames Deed of Trust, and the Curtis/Roots Deed. Curtis timely appealed the summary judgment ruling on April 26, 2024. In a separate order entered on May 30, 2024, the bankruptcy court dismissed with prejudice Curtis' first amended crossclaims. Curtis timely appealed the dismissal on June 12, 2024.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334.[11] We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it granted Ammec's motion for summary judgment and denied Curtis' and Debtor's cross-motion for summary judgment?

2 Did the bankruptcy court err when it dismissed Curtis' first amended crossclaims?

---

[11] Curtis argues that the bankruptcy court lacked subject matter jurisdiction over Ammec's claims for relief. We disagree. Each of Ammec's claims pertained to Debtor's asserted ownership of the Property. As such, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334(b) because the adversary proceeding was a proceeding either "arising under," "arising in," or "related to" a case under title 11. *See generally Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1285-87 (9th Cir. 2013) (explaining bankruptcy court jurisdiction under 28 U.S.C. § 1334(b)).

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment ruling. *Stadtmueller v. Sarkisian (In re Medina)*, 619 B.R. 236, 240 (9th Cir. BAP 2020), *aff'd*, 2021 WL 3214757 (9th Cir. July 29, 2021). We also review de novo its dismissal of Curtis' crossclaims under Civil Rule 12(b)(1) and (6). *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011). These Civil Rules are made applicable in adversary proceedings by Rule 7012(b). *Id.* at 569 n.3 (9th Cir. BAP 2011). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when the pleadings and evidence show that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Civil Rule 56(a) (incorporated by Rule 7056); *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). The moving party initially must show the absence of genuine issues of material fact. If the moving party meets this burden, then the nonmoving party must show specific facts establishing the existence of genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## DISMISSAL STANDARDS

When we review an order granting a Civil Rule 12(b)(6) motion, we consider the legal sufficiency of the plaintiff's complaint. *See Johnson v.*

*Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). We must assess whether the complaint presents a cognizable legal theory and whether it contains sufficient factual allegations to support that theory. *Id.* Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

## DISCUSSION

**A.    Appeal from grant of Ammec's summary judgment motion and denial of Curtis' and Debtor's cross-motion for summary judgment.**

In evaluating the bankruptcy court's summary judgment rulings, there are two main issues we must address. First, we consider whether the state court judgment against Sisters voiding the Ammec/Sisters Deed is binding and enforceable against Debtor and Curtis. In other words, Ammec has no claim to void the subsequent Downstream Transfers unless its deed to Sisters was voidable. If the Ammec/Sisters Deed was properly voided, then we reach the second question: were Debtor and Curtis bona fide purchasers for value? Where, as here, a prior transfer is merely voidable rather than void, a "subsequent bona fide purchaser of the property was entitled to rely on it." *Schiavon v. Arnaudo Brothers*, 84 Cal. App. 4th 374, 379 (2000); *see also Fonteno v. Wells Fargo Bank, N.A.*, 228 Cal. App. 4th 1358, 1371 (2014) ("should a trustee's deed be voidable, rather

13

than void, bona fide purchasers are generally entitled to keep the property purchased"). Therefore, even if Ammec's deed to Sisters was properly voided, Debtor and Curtis obtained enforceable title if they gave value in exchange for their respective property interests and took those interests without notice of the infirmity that rendered the Ammec/Sisters Deed voidable.[12]

### 1. The scope of this appeal.

In the adversary proceeding, Ammec sued Curtis, Sisters, Debtor, and Thames. The bankruptcy court entered judgment voiding and cancelling the Sisters/Roots Deed and the other Downstream Transfers. Yet, Curtis is the only party that has appealed. This has potentially significant consequences concerning the scope of this appeal.

Curtis' attempt to appeal on behalf of Sisters, Debtor, and Thames raises prudential, third-party standing concerns. *See generally Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) (explaining third party

---

[12] As a preliminary matter we must note the difficulty we have encountered in interpreting Curtis' arguments; they indiscriminately pivot back and forth between attacks on the state court judgment and the bankruptcy court's decision without offering sufficient factual or legal development. We have attempted to address her arguments. However, as a former attorney, she is not entitled to the same leeway in interpreting her papers to which less sophisticated pro se litigants are entitled. *See Albert v. Gonzalez*, 2023 WL 8895708, at *1 n.1(C.D. Cal. Oct. 6, 2023) (citing *Huffman v. Lindgren*, 81 F.4th 1016, 1020 (9th Cir. 2023)), *aff'd*, 2024 WL 3874234 (9th Cir. Aug. 20, 2024). To the extent that any of her arguments are not specifically addressed, they are rejected as meritless.

standing principles).[13] Furthermore, given that Curtis no longer is licensed to practice law in California, she cannot act as counsel in this appeal for anyone except herself. *See D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004). Nor can Curtis, acting as Debtor's sole owner and managing member, circumvent the requirement that entities appear through licensed counsel. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993). Moreover, Debtor's chapter 11 case was converted to chapter 7 in April 2024. Accordingly, any appeal arising from the cancellation of the Sisters/Roots Deed—which affected property of Debtor's bankruptcy estate—should have been pursued (if at all) by the chapter 7 trustee and not Curtis. *See Est. of Spirtos v. One San Bernadino Cnty. Super. Ct. Case Numbered SPR 02211*, 443 F.3d 1172, 1175 (9th Cir. 2006); *Meehan v. Ocwen Loan Servicing, LLC (In re Meehan)*, 2014 WL 4801328, at *4 (9th Cir. BAP Sept. 29, 2014), *aff'd*, 659 F. App'x 437 (9th Cir. 2016).[14]

---

[13] Curtis' web of interests in and affiliations with the Property, Sisters, and Debtor establishes that she has a sufficient stake in the outcome of these appeals to satisfy Article III standing requirements. *See generally Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (describing Article III standing requirements). As set forth above, however, she may only argue on behalf of her own interests, which have been obfuscated by her execution of the Curtis/Roots Deed immediately following her execution of the Roots/Curtis Deed. These two deeds arguably cancelled each other out and appear to have deprived Curtis of any legitimate direct interest in the Property or the outcome of this appeal.

[14] Curtis has repeatedly alleged that she is a third-party beneficiary of the Ammec/Sisters Deed. She also has alleged that Sisters held this deed in trust for her

In light of these restrictions, Curtis' arguments on Debtor's behalf attacking the cancellation of the Sisters/Roots Deed are beyond the proper scope of this appeal. Similarly, Curtis cannot appeal on Thames' behalf the cancellation of the Thames Deed of Trust. This cancellation also is beyond the proper scope of this appeal. Even so, for the sake of analytical completeness—and in light of issues Curtis has raised on appeal as to her interests in the Property—we address the cancellation of the Sisters/Roots Deed.

## 2.    The judgment voiding the Ammec/Sisters Deed is binding.

The state court action voided the Ammec/Sisters Deed based on Curtis' violation of her professional obligations as Ammec's counsel. Though the state court previously had entered default against Sisters, it proceeded to conduct a trial on Ammec's claim to void the Ammec/Sisters Deed. Sisters failed to appear, but Ammec presented its case to the court. The state court's Statement of Decision detailed the basis for voiding the Ammec/Sisters Deed. It granted Ammec's claim to cancel and void this deed based on Curtis' violation of former CRPC Rules 3-310 and 3-300, stating:

> Based on the testimony of Charles Hasbun, Ammec's CEO, that the May 6, 2014 Grant Deed (Ammec's Exhibit No.1 admitted into evidence at trial) was to pay attorney's fees to Curtis, and

benefit. But we have not found in the summary judgment record any evidence to support these allegations. More importantly, Curtis has not made similar allegations as to the Sisters/Roots Deed. Nor have we seen any evidence in the record to support that notion.

16

that there was no written fee agreement for any of Curtis's multiple defendants and no disclosures by Curtis of actual or potential conflicts among her multiple clients in the Ruth [Light] case, the Grant Deed is voidable by Ammec. *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Ca1. 5th 59 . . . , citing Rule 3-310(C)(3), Cal. Rules of Prof. Conduct.

Curtis' appeal on behalf of Sisters was dismissed by the California Court of Appeal, and the state court's judgment cancelling the Ammec/Sisters Deed is final.

Ammec contends that the state court judgment conclusively establishes that the Ammec/Sisters Deed is void, thereby calling into question the validity of the Downstream Transfers. Curtis disagrees. She raises numerous challenges to the Statement of Decision and the bankruptcy court's reliance on it. Primarily, she argues that the state court could not avoid the Ammec/Sisters Deed because the jury entered its verdict in her favor and against Ammec on its claim for fraud. But the jury verdict on the fraud claim has nothing to do with the state court's cancellation of the Ammec/Sisters Deed. The state court voided that deed because Curtis acquired it in violation of her ethical obligations as Ammec's counsel—not as a result of fraud.

Undaunted, Curtis says that she objected to the admission of the Statement of Decision "because it did not make sense in light of the actual judgment." Aplt. Opn. Br. at p. 11. This argument merely continues her

effort to view the state court judgment solely through the prism of the fraud claim on which she prevailed. However, this is not a basis to collaterally attack the state court's judgment voiding Ammec's deed to Sisters, which makes perfect sense because it is not based on the unsuccessful fraud claim.

### a. The *Rooker-Feldman* doctrine does not apply.

Additionally, Curtis argues that the bankruptcy court's decision violated the *Rooker-Feldman* doctrine. This doctrine emanates from the holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983), "under which a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). Once again, this argument is tied to Curtis' belief that the state court judgment was based on the unsuccessful fraud claim. She also contends that she prevailed on all claims in the state court action because Ammec voluntarily dismissed her from its fourth cause of action seeking to cancel the Ammec/Sisters Deed just before the state court held its bench trial on that claim. Alternatively, she argues that she prevailed in the state court because Ammec also dismissed its claim against her for breach of her fiduciary duties.

Notwithstanding Curtis' arguments, the state court judgment

18

specifically canceled and voided the Ammec/Sisters Deed. Nothing Curtis has said or argued can change this unequivocal fact. The meaning and import of the state court judgment is not subject to legitimate dispute. Thus, neither Ammec's adversary proceeding—nor the bankruptcy court's summary judgment ruling—violated the *Rooker-Feldman* doctrine.

Rather, it is Curtis who attempts to collaterally attack the state court's judgment voiding the Ammec/Sisters Deed. We acknowledge that neither Curtis nor Debtor were parties to the state court judgment voiding the Ammec/Sisters Deed because the court granted Ammec's motion to dismiss them without prejudice immediately before the bench trial occurred. Consequently, the *Rooker-Feldman* doctrine does not apply. It only can be applied against parties to the prior action. *Fatehmanesh v. Seror (In re Manesh)*, 2018 WL 989582, at *10 (9th Cir. BAP Feb. 6, 2018), *aff'd*, 774 F. App'x 413 (9th Cir. 2019).

### b.    Full faith and credit principles apply.

Even though the *Rooker-Feldman* doctrine does not apply, full faith and credit principles are both applicable and controlling. Under 28 U.S.C. § 1738, "state judicial proceedings shall have the same full faith and credit in every court within the United States as they have in the courts of the State from which they are taken . . . ." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 76 (1984). "The most direct consequence of applying the Full Faith and Credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose." C. Wright &

19

A. Miller, 18B FEDERAL PRACTICE AND PROCEDURE, JURISDICTION, § 4469 &
n.16 (3d ed. 2024) (listing cases). Full faith and credit doctrine also prohibits
us from considering Curtis' collateral attacks on the state court judgment.
*See, e.g., Greenfield v. Sheley (In re Greenfield)*, 2022 WL 1115412, at *5 n.8 (9th
Cir. BAP Apr. 14, 2022) (acknowledging that under Full Faith and Credit
Act the bankruptcy court "could not examine the propriety of the
underlying judgment"); *Italiane v. Jeffrey Catanzarite Fam. Ltd. P'ship (In re
Italiane)*, 632 B.R. 662, 675 n.6 (9th Cir. BAP 2021) ("To the extent
[Appellant] is asking us to second-guess the state court's [decisions], we
cannot do so. Such second-guessing would contravene . . . 28 U.S.C. § 1738
and would constitute an impermissible collateral attack . . . ."), *aff'd*, 2022
WL 17412881 (9th Cir. Dec. 5, 2022); *Hobbs v. Arizona (In re Hobbs)*, 2016 WL
5956648, at *6 (9th Cir. BAP Oct. 13, 2016) (holding that bankruptcy court
"was required to give full faith and credit to the Judgment" and that "[a]ny
error in the underlying state court findings should have been addressed in
a motion for reconsideration or an appeal to the appropriate state
tribunal.").

Admittedly, application of the full faith and credit doctrine often
overlaps with common law preclusion doctrines and raises doubts when
applied to nonparties in the context of issue preclusion if it is applied
without consideration of concepts like party control and privity. *Compare In
re Manesh*, 2018 WL 989582, at *10, *with Moucka v. Windham*, 483 F.2d 914,
916 (10th Cir. 1973). Neither Curtis nor Debtor were parties to the trial

20

resulting in the judgment avoiding the Ammec/Sisters Deed, even though this deed served as payment for Curtis' legal fees, and the state court voided it based on Curtis' breach of former CRPC Rules 3-310 and 3-300. Though we must proceed with caution in determining whether and to what extent Curtis and Debtor are bound by the state court judgment, neither party has cogently explained how full faith and credit principles should apply. Curtis does state that she had a right to file a declaratory relief action to preclude any finding that the Ammec/Sisters Deed was void. Such an action would directly contravene the full faith and credit to be given to the state court judgment as Curtis would be attempting to collaterally attack the state court's judgment entered against Sisters.

In short, Curtis cannot collaterally attack the state court judgment voiding the Ammec/Sisters Deed. We hold that the full faith and credit we are compelled to give the state court's judgment precluded Curtis' efforts to relitigate the validity of the Ammec/Sisters Deed in the adversary proceeding. Nonetheless, any concerns arising from application of this doctrine directly against Curtis and Debtor are conclusively resolved by California statue.

### i. CCP § 1908(a)(2).

The bankruptcy court accepted Ammec's argument that because Debtor and Curtis claim to be successors in interest to Sisters by virtue of the Downstream Transfers, CCP § 1908(a)(2) applies to render the state court judgment voiding the Ammec/Sisters Deed binding on them. As a

21

whole, CCP § 1908 identifies different types of final California judgments and explains against whom they can be enforced and the circumstances permitting such enforcement. More specifically, CCP § 1908(a)(2) codifies certain aspects of common law preclusion doctrine in matters involving title between parties and successors in interest. *See Fed'n of Hillside & Canyon Ass'ns v. City of L.A.*, 126 Cal. App. 4th 1180, 1205 (2004); 7 Witkin, CAL. PROC. § 361 (6th ed. 2024). CCP § 1908(a)(2) provides:

> [a] judgment or order is, in respect to the matter directly adjudged, conclusive between the parties **and their successors in interest by title subsequent to the commencement of the action** or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding.

CCP § 1908(a)(2) (emphasis added).

CCP § 1908(a)(2) supports cancellation of the Roots/Curtis Deed—the only conveyance at issue within the proper scope of this appeal. Curtis acquired her interest (if any) in the Property under the Roots/Curtis deed in February 2017, roughly a year after the commencement of the state court action. Having been a party to the state court action prior to her dismissal, Curtis clearly had actual notice of the pendency of the action when she acquired her interest. Accordingly, the state court's Statement of Decision is conclusive as against Curtis under CCP § 1908(a)(2), specifically that the Ammec/Sisters Deed was void based on Curtis' breach of former CRPC Rules 3-310 and 3-300.

22

We note that if somehow the Sisters/Roots Deed was relevant to Curtis' appeal, application of CCP § 1908(a)(2) to Debtor based on its receipt of that deed would be problematic. California law makes clear that for CCP § 1908(a)(2) to apply, the prior action must have commenced **before** the successor acquired its interest in the subject property. *Topanga Corp. v. Gentile*, 219 Cal. App. 2d 274, 278–79 (1963) (holding that CCP § 1908(a)(2) "does not apply where the interest is acquired **before** the commencement of the action"); *Holman v. Toten*, 54 Cal. App. 2d 309, 314, 128 P.2d 808, 811 (1942) (listing multiple cases). Here, Debtor acquired its interest in the Property no later than January 2015—when the Sisters/Roots Deed was recorded. This occurred at least a year before Ammec commenced the instant state court action in February 2016. Consequently, Ammec's argument against Debtor based on CCP § 1908(a)(2) would be unavailing with respect to the Sisters/Roots Deed.

### ii. CCP § 1908(b).

But even if we were to reach the merits of the bankruptcy court's cancellation of the Sisters/Roots Deed, we still would affirm. CCP § 1908(b) provides an alternate ground for affirmance.[15] Subsection (b) statutorily extends the preclusive effect of a judgment to those who control an action:

A person who is not a party but who controls an action, individually

---

[15] We can affirm on any basis supported by the record. *Shanks v. Dressel*, 540 F.3d 1082, 1086 (9th Cir. 2008). This alternative basis for affirming the cancellation of the Sisters/Roots Deed also could serve as a separate and independent ground for affirming the cancellation of the Roots/Curtis Deed.

or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction . . . .

CCP § 1908(b).

Thus, when a nonparty individual—through their management or ownership role—controls the defense of a defendant business entity and has overlapping interests and incentive to litigate with the defendant business entity, the plaintiff can seek in subsequent proceedings to render the judgment against the defendant business entity enforceable against the nonparty individual. *See generally Kayne v. Ho*, 2013 WL 12123202, at *12 (C.D. Cal. Aug. 28, 2013) (citing *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 151 (1984)). Likewise, if that same individual owns and controls another business entity—also not a party to the prior action but sharing the defendant business entity's overlapping interests and incentives to litigate—the reach of the prior judgment typically can be extended to the nonparty business entity. *See id.* at *13 (citing *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2011 WL 798901, at *5 (C.D. Cal. Feb. 25, 2011), *aff'd*, 509 F. App'x 661 (9th Cir. 2013)).

Curtis has admitted that she owned and controlled both Sisters and Debtor. Sisters had **the opportunity** to defend against Ammec's state court lawsuit and avoidance of the Ammec/Sisters Deed, which arose from Curtis' underlying actions in representing Ammec. Curtis necessarily

controlled that defense. She elected to permit entry of default against Sisters and failed to timely seek to set aside this default. Moreover, Curtis attempted to appeal the state court judgment on behalf of Sisters but did so improperly. Again, she necessarily controlled the decision to appeal. That Curtis ultimate failed to defend or appeal the state court judgment does not alter the fact that the state court conducted a non-jury trial during which her conduct was actually litigated, and through her control of Sisters' defense she had **the opportunity** to present a defense on Sisters' behalf. Put bluntly, Curtis' litigation missteps do not militate against application of CCP § 1908(b).

In matters of due process, the focus is on whether the adverse party had a "meaningful opportunity" to appear and be heard. *Boddie v. Connecticut*, 401 U.S. 371, 378–80 (1971). For purposes of applying CCP § 1908(b), whether a nonparty had sufficient due process to justify extension of the judgment turns on the extent of that nonparty's control over the party against whom the judgment was entered, together with the opportunity and incentive to litigate the matter. *Cf. First Nat'l Bank v. Russell (In re Russell)*, 76 F.3d 242, 245 (9th Cir. 1996).

*Russell* is particularly instructive. A state court entered a stipulated judgment for judicial foreclosure and also determined liability in favor of a lender and against the Russells' three related entities, referred to as "Den–Ed," "the Trust," and "SPC." *Id.* at 243-44. The state court specifically excluded the Russells from the stipulated judgment and its determination

25

of the other parties' personal liability for the loans. The court reserved that issue as against the Russells for further action in the event the automatic stay terminated in the Russells' contemporaneous bankruptcy case. *Id.* But the state court did permit judicial foreclosure of the Russells' real property collateral. *Id.*

The Russells later sued the lender in bankruptcy court for alleged violation of their civil rights. They alleged that the loan officer they dealt with was motivated by racial animus and sought to financially destroy them. The Russells argued this led to their loan default and ultimately to the state court action and judgment. *Id.*

The bankruptcy court granted the lender's motion to dismiss the adversary proceeding with prejudice, "holding that the Russells were precluded from raising the civil rights claim because of the previous state court judgment against the entities that the Russells controlled." *Id.* The BAP reversed reasoning that litigants always can agree to limit or negate the preclusive effect of a judgment when it is the result of consensual resolution of the action. *See Russell v. First Nat'l Bank (In re Russell)*, 166 B.R. 901, 905 (9th Cir. BAP 1994) (citing *Manning v. Wymer*, 273 Cal. App. 2d 519, 526-27 (1969)), *rev'd*, 76 F.3d 242 (9th Cir. 1996). Because the stipulated judgment specifically excluded the Russells, the BAP concluded that they were not precluded from bringing their subsequent civil rights action. *Id.* More importantly for our purposes, the BAP remarked that because the Russells likely lacked sufficient incentive to pursue the civil rights action in

state court on behalf of Den-Ed and the Trust, it would be unfair and improper to hold that the Russells—as persons in control of these litigant-entities—were precluded from personally pursuing their civil rights action in the bankruptcy court. *Id.*

The Ninth Circuit reversed the BAP. In relevant part, it specifically relied on CCP § 1908(b) to conclude that the Russells were precluded from pursuing in the bankruptcy court their civil rights action. As the Ninth Circuit explained:

> In the present case, we conclude that the state court judgment was a final judgment on the merits with regard to entities that the Russells completely controlled. The state judgment concerned identical issues to those brought in the civil rights claim, namely the legality of the debts. It adjudged that the Trust, SPC, and Den–Ed were in default of their loans to First National and it allowed First National to begin foreclosure proceedings against the property owned by the Russells that was used as collateral for the loans.
>
> Because the Russells are in privity with these entities, we conclude that the state court judgment applies equally to them. The Russells completely control Den–Ed, SPC, and the Trust. Therefore the Russells had a full and fair opportunity to present their civil rights claims in the state court proceeding. The Russells also had a strong financial stake in the proceedings. It is true that the Russells' personal liability for the deficiency of the foreclosures on their real property has not been adjudged. However, it has been conclusively adjudicated that the loans by First National are valid, that the loans are in default, and that First National can foreclose on the Russells' property. These issues cannot be relitigated by the Russells.

*In re Russell*, 76 F.3d at 245.

Here, the record is clear and unequivocal: Curtis enjoyed exclusive control of the defense of the claim against Sisters to avoid the Ammec/Sisters Deed. She not only had control but also had every incentive to defend against Ammec's avoidance claim given her asserted interests individually and as the person in control of Debtor as the other downstream transferee.[16] Finally, she had sufficient opportunity to control the defense of Sisters' interest. That she chose not to avail herself of that opportunity does not bar application of CCP § 1908(b).

Under § 1908(b), as applied by the Ninth Circuit, Curtis' breach of her professional obligations and the resulting voidability of the Ammec/Sisters deed have been conclusively litigated. As a result, both Debtor and Curtis are bound by the state court judgment voiding the Ammec/Sisters Deed. This in turn precludes most of Curtis' arguments on appeal relating to the bankruptcy court's cancellation of the Downstream Transfers. It also means that her efforts to invalidate the state court judgment are meritless.

### 3. None of the Downstream Transfers were transfers to bona fide purchasers.

Though the Ammec/Sisters Deed was voidable and declared void by the state court, a subsequent transferee may rely on voidable title if they

---

[16] Curtis never has asserted that she lacked a personal stake in the validity of the Ammec/Sisters Deed. To the contrary, she has repeatedly alleged that she was a third-party beneficiary of that deed and that Sisters took its interest in the Property in trust for her benefit. Though Curtis never adduced any evidence to support these allegations, she undoubtedly perceived herself as having every incentive in the state court action to attempt to defeat Ammec's attack on the validity of the Ammec/Sisters Deed.

28

are an innocent bona fide purchaser for value. *See Firato v. Tuttle*, 48 Cal. 2d 136, 139-40 (1957); *Schiavon* 84 Cal. App. 4th at 381 (following *Firato*); *see also Fallon v. Triangle Mgmt. Servs., Inc.,* 169 Cal. App. 3d 1103, 1106 (1985) (stating that a voidable deed "can be relied upon and enforced by a bona fide purchaser"); *cf. U.S. Bank Nat'l Ass'n v. Gates*, 2014 WL 12572929, at *4 (C.D. Cal. Apr. 29, 2014) (explaining difference under California law between void and voidable instruments).[17] Under California law, when as here the prior claimant claims legal title to the property, the subsequent purchaser bears the burden of proof to establish that she qualifies as a bona fide purchaser. 4 CAL. REAL ESTATE § 10:51 & nn. 5-7 (4th ed. 2024); *see also Bell v. Pleasant*, 145 Cal. 410, 413–14 (1904) (listing cases).

In California, "[a] bona fide purchaser is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings. The elements of bona fide purchase are payment of value, in good faith, and without actual or constructive notice of another's rights." *Countrywide Home Loans, Inc. v. United States*, 2007 WL 87827, at *9 (E.D. Cal. Jan. 9, 2007) (citations omitted).

Here, Curtis has neither alleged nor offered any evidence that she and Debtor acquired their Downstream Transfers as bona fide purchasers. Instead, she has asserted that it was unnecessary for her to prove bona fide

---

[17] Citing *Fallon*, Curtis claims that she automatically wins because all of the Downstream Transfers predated the state court judgment voiding the Ammec/Sisters Deed. Curtis simply ignores the part of *Fallon* limiting this result to bona fide purchasers.

purchaser status because the state court judgment was invalid. We already have rejected this argument. Alternately, she claims that bona fide purchaser status was unnecessary because Sisters was a bona fide purchaser when Ammec conveyed the Property. This argument is wholly at odds with the California voidable title law we cite immediately above and simply ignores the subsequent transferees.

In sum, the state court judgment voiding the Ammec/Sisters Deed is enforceable against Debtor and Curtis. There is no evidence demonstrating that either of them took their respective Downstream Transfers as bona fide purchasers. As successors in interest to voidable title without bona fide purchaser status, the bankruptcy court properly entered summary judgment cancelling both the Sisters/Roots Deed and the Roots/Curtis Deed. Furthermore, Curtis has no authority to appeal on Debtor's behalf, and hence the Sisters/Roots Deed is beyond the scope of these appeals.

### 4.    Thames Deed of Trust.

Curtis lacks standing to challenge the bankruptcy court's voiding of the Thames Deed of Trust on Thames' behalf. See *Tingley*, 47 F.4th at 1069-70. There is nothing in the record to suggest that she has any personal stake in whether the Thames Deed of Trust is valid.

In any event, Curtis' appeal brief is bereft of any argument challenging the bankruptcy court's cancellation of the Thames Deed of Trust. As a result, she has forfeited any such arguments she might have made. *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (issues not

specifically and distinctly argued in appellant's opening appeal brief are forfeited); *Dietz v. Ford (In re Dietz)*, 469 B.R. 11, 22 (9th Cir. BAP 2012) (same), *aff'd and adopted*, 760 F.3d 1038 (9th Cir. 2014).

> **5.    None of Curtis' remaining arguments merit reversal.**

Curtis' remaining arguments are either at odds with our conclusion that state court judgment is binding against her, are irrelevant to the matters properly on appeal, or are based on her patently incorrect understanding of the controlling law and undisputed facts. In short, none of Curtis' arguments come close to justifying reversal of the bankruptcy court's summary judgment ruling.

Based on our analysis of CCP § 1908 and our understanding of California law on voidable title, we hold that the bankruptcy court appropriately granted Ammec's summary judgment motion and properly denied Curtis' and Debtor's cross-motion for summary judgment.

**B.    Appeal from dismissal of crossclaims.**

Curtis also has appealed from the dismissal with prejudice of her first amended crossclaims. Her appeal brief only specifically and distinctly addresses "Count I" in her first amended crossclaims, which seeks a declaration determining that the Ammec/Sisters Deed was valid. She attacks the validity of the state court judgment, alleging: (1) the state court lawsuit was time barred, (2) that Ammec was a suspended business entity under California tax law at the time it commenced the state court action; (3) that she and Debtor prevailed in the state court lawsuit when Ammec

31

voluntarily dismissed both of them without prejudice shortly before trial; and (4) that Ammec as a formerly suspended corporation could not challenge the validity of the Ammec/Sisters Deed.

As we already have explained above, as a matter of law, the state court judgment voiding the Ammec/Sisters Deed is binding as against Curtis. And we have no power to look behind it. For the same reasons we concluded above as a matter of law that the bankruptcy court correctly gave full faith and credit to the state court judgment, we also uphold as a matter of law its dismissal with prejudice of Count 1 of Curtis' crossclaims.

## CONCLUSION

For the reasons set forth above, we AFFIRM.